UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN RE: CINFED FEDERAL CREDIT UNION DATA BREACH LITIGATION | Case No. 1:23-cv-776<br><br>JUDGE DOUGLAS R. COLE |

## OPINION AND ORDER

This putative class action lawsuit stems from a data breach at Cinfed Federal Credit Union (Cinfed) that compromised the personal information of some 58,000 individuals. Plaintiffs, on behalf of themselves and a putative class, now seek to settle their claims with Cinfed. To that end, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 21). The Court, for the reasons discussed below, **GRANTS** the Motion (Doc. 21), **PRELIMINARILY CERTIFIES** a nationwide class, and **PRELIMINARILY APPROVES** the proposed class action settlement.

## BACKGROUND[1]

Cinfed is a community chartered federal credit union that provides banking services. (Doc. 16 ¶ 20, #144). To provide those services, Cinfed requires clients to provide personal information and personally identifying information (PII) such as their names, addresses, phone numbers, emails, social security numbers, and birthdates, as well as proof of income and health insurance, among other things. (*Id.*

---

[1] The Court cites the Consolidated Amended Class Action Complaint and Jury Trial Demand (Doc. 16) in laying out the relevant background here. But it notes that Cinfed, in the proposed class action settlement, denies any wrongdoing. (Doc. 21-1, #243).

¶ 22, #144). It also requires its employees and various third parties with whom it does business to provide similar information. (*Id.* ¶ 23, #144–45).

On September 22, 2023, unknown bad actors launched a cyberattack on Cinfed that allowed them to gain unauthorized access to Cinfed's internal corporate network. (*Id.* ¶ 30, #146). They maintained this access until September 25, 2023. (*Id.* ¶ 32, #146). The hackers accessed documents on Cinfed's internal network, thereby compromising the PII of thousands of individuals. (*Id.* ¶ 33, #146–47). It took Cinfed roughly a month to discover the breach, after which it began to notify those potentially affected. (*Id.* ¶¶ 31, 34 #146–47). Plaintiffs now suspect their PII is accessible on the dark web, which risks exposing them to identity theft and financial fraud. (*Id.* ¶¶ 40–42, 64–66, #147–48, 156).

In response to the data breach, Plaintiffs filed this putative class action lawsuit. (Doc. 1). Plaintiffs assert five counts in their consolidated amended complaint: a negligence claim based on traditional negligence and negligence per se theories of liability (although Plaintiffs label each theory as a separate claim), (Counts I, II); a breach-of-implied-contract claim, (Count III); an unjust enrichment claim, (Count IV); and a declaratory judgment claim, (Count V). (Doc. 16 ¶¶ 154–210, #173–83).

The parties now seek to settle the Plaintiffs' claims and also the claims of the putative class. (Doc. 21). The proposed settlement agreement defines the putative class as "all Persons residing in the United States whose Private Information was affected by the Data Incident, including those Persons who were sent a Notice Letter

2

notifying them that their Private Information was affected by the Data Incident."[2] (Doc. 21-1, #245). The proposed agreement releases any and all claims the putative class members may have "that are related to or arising out of the alleged Data Incident." (*Id.* at #248, 263–64). In exchange, Cinfed agrees to pay $700,000 into a non-reversionary common fund that will settle putative class claims. (*Id.* at #265–66).

The proposed agreement contemplates that the administrator will disburse the common fund as follows. First, the fund will pay administrative fees, attorneys' fees and class representative service awards (the amount of which is yet to be determined, and which will be subject to the Court's approval, as further discussed below), litigation expenses, and "Out-of-Pocket Expense Claims" (class claims in which a class member has documented out-of-pocket losses that are "reasonably traceable" to the data incident). (*Id.* at #253). Next, the fund will go toward pro rata payments for each class member who submits a claim. (*Id.*). The baseline pro rata payment is $65, subject to a proportional increase or decrease depending on the number of claims submitted. (*Id.*). Finally, any funds remaining after all claiming class members

---

[2] Although the putative class definition uses the term "including," a term which can be read to say that both individuals who have and have *not* received a notice letter are class members, the parties' proposed notice form points to a more limited understanding of the term. The proposed claim form states that "[*i*]*f* you were notified that your private information was potentially affected in a cyberattack … you are a Class Member." (Doc. 21-1, #280 (emphasis added)). Similarly, the proposed long-form notice reads, "If You Were Subject to the Cinfed Federal Credit Union ("Cinfed") Data Incident *and Previously Received a Notice Letter Notifying You of the Incident*, You Could be Eligible for a Payment from a Class Action Settlement." (*Id.* at #287 (emphasis added)). In light of the parties' proposed notice forms, the Court understands the contractual definition of the putative class to encompass only those individuals whose personal data was affected by the data incident *and* who have received a notice letter.

3

receive payments will be deposited in the unclaimed property fund for each class member's respective state.[3] (*Id.* at #254). Simpluris, Inc., (Simpluris), a company experienced in class action claim administration, will process class claims and distribute payments to the class. (*Id.* at #250, 267–68). Simpluris will have the sole authority to reduce the payment amount for class claims on a pro rata basis should the claims exceed the value of the common fund. (*Id.* at #270).

The settlement agreement does not allocate a fixed amount of the common fund for attorneys' fees or class representative service awards. Rather, the agreement provides that "Class Counsel will move the Court for an award of attorneys' fees not to exceed one-third [] of the Settlement Fund." (*Id.* at #264). Similarly, the agreement states that "Plaintiffs intend to request Service Awards in the amount up to $2,000.00 to each of the Plaintiffs … as a result of their time and effort furthering the interests of the Class in this case." (*Id.*).

To effectuate notice to the proposed class, Simpluris will create a settlement website. (*Id.* at #258). The website will contain the long-form notice, the claim form, this preliminary approval order, the settlement agreement, and any orders regarding attorneys' fees and service awards. (*Id.* at #258–59). The settlement website will allow the parties to submit a claim form electronically. (*Id.* at #259). In addition to the settlement website, Simpluris will send out short-form notice mailers to the last

---

[3] Or at least that is what the proposed Settlement Agreement itself says. (Doc. 21-1, #254). Plaintiffs' motion, by contrast, states that any remaining settlement funds will be distributed to a "charitable organization approved of by the Parties." (Doc. 21, #221). The Court's analysis proceeds on the assumption that the proposed Settlement Agreement, which all counsel signed on behalf of their respective clients, is the definitive statement of the settlement terms.

4

known addresses of the class members (which Cinfed will provide). (*Id.* at #258–60). If possible, Simpluris will also email class members a short-form notice. (*Id.*). Simpluris will also establish a toll-free help line to answer questions about the settlement. (*Id.* at #261).

Because Plaintiffs have moved unopposed for preliminary approval of the settlement, the matter is ripe for review.

## JURISDICTION AND CHOICE OF LAW

This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are more than 100 putative class members, and the amount in controversy exceeds $5,000,000.[4] And while the Court is satisfied that minimal diversity exists, it takes pause to explain this element more thoroughly. Since Cinfed is a community chartered federal credit union, (Doc. 16 ¶ 20, #144), it is a federally chartered corporation that lacks a state of incorporation, 12 U.S.C. § 1754 (a "[f]ederal credit union shall be a body corporate"). For diversity jurisdiction purposes, a corporation is "a citizen of every State … by which it has been incorporated *and* of the State … where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). When a typical corporation (i.e., a corporation incorporated in a particular state) is a party to a lawsuit, courts therefore look to *both* the state of incorporation and the principal place of business to determine citizenship.

---

[4] Although the settlement common fund totals only $700,000, the Court finds that Plaintiffs had a good faith basis for believing the amount in controversy exceeded $5,000,000, which is all that is required for federal jurisdiction. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87–88 (2014).

5

*Navy Fed. Credit Union, v. LTD Fin. Servs., LP*, 972 F.3d 344, 350 (4th Cir. 2020). But what of federally chartered corporations that lack a state of incorporation? Must they satisfy both of § 1332(c)(1)'s clauses to properly qualify for diversity jurisdiction? The only caselaw that directly tackles this question (at least so far as the Court can tell—the parties did not bother to address the issue) comes from the Fourth Circuit, which concluded that the "and" in § 1332(c)(1) is disjunctive. *Navy Fed. Credit Union*, 972 F.3d at 356–59. Said differently, a federally chartered corporation like Cinfed is a citizen of the state where it has its principal place of business for diversity purposes; it does not matter that the federal corporation lacks a state of incorporation. *Id.* at 364. Applying that rule here, because Cinfed's principal place of business is in Ohio and four of the named plaintiffs are citizens of Kentucky, (Doc. 16 ¶¶ 16–20, #143–44), minimal diversity exists.

Satisfied that jurisdiction is present, the Court next turns to another threshold issue. Before preliminarily certifying a nationwide class, the Court must discern which law applies to the putative class claims. *See Hawes v. Macy's Inc.* (*Hawes I*), Nos. 1:17-cv-754, 2:20-cv-81, 2023 WL 8811499, at *5 (S.D. Ohio Dec. 20, 2023); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules."). Plaintiffs raise several common law claims on behalf of a nationwide class. To determine which law applies to those claims in the class action context, this Court must (1) look to Ohio's choice-of-law principles (as it would in any diversity case), and (2) determine whether

6

that state's law can constitutionally govern the claims of the entire class. *See Hawes I,* 2023 WL 8811499, at *5–*7.

As to the former, Ohio's choice-of-law principles do not require an extensive choice-of-law analysis where no conflict exists between the possibly applicable states' laws. *Id.* at *6. In such cases, Ohio's rules dictate that Ohio law applies. *ISCO Indus., Inc. v. Great Am. Ins.*, 148 N.E.3d 1279, 1283 (Ohio Ct. App. 2019) ("If two jurisdictions apply the same law, or would reach the same result applying their respective laws, a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply." (cleaned up)). This Court has already held that Ohio's version of unjust enrichment presents no conflict with other states' similar actions. *Hawes I,* 2023 WL 8811499, at *7. The same seems to be true for Plaintiffs' negligence claims, at least in circumstances where the defendant has not alleged contributory or comparative negligence on the part of the plaintiff. *Compare Rieger v. Giant Eagle, Inc.*, 138 N.E.3d 1121, 1125 (Ohio 2019), *with* Restatement (Second) of Torts §§ 281–282 (Am. L. Inst. 1965). The same conclusion applies to Plaintiffs' breach-of-implied-contract claim (which, based on the substance of the allegations, the Court construes as an implied-in-law contract theory). *See J. Bowers Constr. Co. v. Gilbert*, 18 N.E.3d 770, 774 (Ohio Ct. App. 2014); 1 Willison on Contracts §§ 1:6, 1:7 (4th ed. 2024); *cf.* Restatement (Third) of Restitution and Unjust Enrichment §§ 1 cmt. a, 4 cmts. b, e (Am. L. Inst. 2011). Accordingly, the Court—in this preliminary approval context—will apply Ohio law to the putative class claims. However, the Court instructs the parties to brief this issue in their request for final

7

approval. While the Court is satisfied for present purposes that no glaring conflict of law exists with respect to the class claims, that satisfaction stems from the function that this Opinion and Order serves: preliminary certification of a class for the purpose of disseminating notice. More serious consideration is necessary before finally approving a settlement that releases various legal claims of thousands of absent class members.

As for the second prong of the inquiry (whether Ohio law may constitutionally apply to putative class members' claims), because no obvious conflict of law exists, Ohio law may constitutionally govern the claims of the entire putative class. Extraterritorial application of law creates no cognizable constitutional harm when the extraterritorially-applied foreign law does not conflict with the local law of the respective class members. *See Hawes I,* 2023 WL 8811499, at \*6–\*7, \*6 n.15 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985)).

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 23(e)(1)(B) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to[] approve the [settlement] proposal under Rule 23(e)(2); and [to] certify the class for purposes of judgment on the proposal." Rule 23(e)(2) governs when a court may, assuming it has already certified a class, approve a class action settlement. Specifically, it requires the court to determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). So at the preliminary approval stage, the Court's task is to determine whether it may likely (1) finally certify a class and (2) approve

8

the substance of the settlement—that is to say, it must discern whether the settlement is a "fair, reasonable, and adequate" disposition of the class claims.

### A. Preliminary Class Certification for Settlement Purposes

Rule 23 allows a class to be certified only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). And on top of the Rule 23(a) requirements, a class must satisfy one of Rule 23(b)'s conditions. In this case, the parties point to Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

#### 1. Numerosity, Commonality, Typicality, and Adequacy

The Court finds that all four Rule 23(a) requirements are met as to the nationwide class. The putative class, which numbers some 58,000 individuals, (Doc. 21, #228), obviously meets the numerosity requirement. *See, e.g.*, *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-cv-411, 2023 WL 3204684, at *3 (S.D. Ohio May 2, 2023) (finding that 647 class members meets the numerosity requirement).

Commonality and typicality are also satisfied. To demonstrate questions of law or fact common to the class, Plaintiffs must show that the putative class claims "depend upon a common contention" that is "of such a nature that it is capable of

classwide resolution," such that determination of the contention's "truth or falsity" will resolve a central issue to the claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Typicality similarly requires that the named plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members." *Miller v. Charter Nex Films - Delaware, OH, Inc.*, No. 2:18-cv-1341, 2020 WL 2896913, at *4 (S.D. Ohio June 2, 2020) (cleaned up).

Here, Plaintiffs, along with the others in the putative class, rest their claims on a central legal contention: Cinfed was negligent in securing their personal data. (*See* Doc. 16, #173–83 (referencing Cinfed's inadequate security measures in support of each claim)). That contention does not require individualized proof. Rather, it requires evidence of the broadly applicable security measures Cinfed took that would affect the entire class. In other words, its truth or falsity is capable of resolution in "one stroke." *Wal-Mart*, 564 U.S. at 350. So commonality and typicality are present.

Lastly, it appears to the Court that Plaintiffs have "fairly and adequately protect[ed] the interests of the class." Fed. R. Civ. P. 23(a)(4). Class representatives adequately represent the rest of the class when they (1) share common interests with the absent class members, and (2) vigorously "prosecute the interests of the class through qualified counsel." *Hunter*, 2023 WL 3204684, at *4 (cleaned up). The Court finds that Plaintiffs' counsel have adequately prosecuted the interests of the class so far. And the Court further finds that Plaintiffs' interests largely align with the putative class members'. That said, the Court notes its misgivings about Plaintiffs'

stated intent to seek service awards for the class representatives, particularly in a case such as this where the defendant never answered and the case never proceeded to discovery. A settlement agreement's provision of service awards for class representatives creates at least a *risk* of conflicting interests. Class representatives may choose to settle out of a desire to obtain that service award rather than for the good of the class. *See Hawes v. Macy's Inc.* (*Hawes II*), Nos. 1:17-cv-754, 2:20-cv-81, 2024 WL 2125640, at *6 (S.D. Ohio May 13, 2024) (citing *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013)). In this case, however, it seems Plaintiffs have secured a common fund well within the norm for data breach class actions, which assuages the Court's adequacy concerns—at least for present purposes. (*See* Doc. 22-1, #344–45 (Plaintiffs' counsel providing a table listing other data breach class action settlement amounts, which reveals that this common fund is the median of the group by providing a recovery of roughly $12.00 per class member)). That said, as further described below, the Court intends to scrutinize the particulars of any request for service awards as part of the final approval process. *See infra* Section B.4.

In sum, the Court finds that Rule 23(a)'s requirements are met for provisional certification purposes.

### 2. Predominance and Superiority

The Court likewise finds that the class action meets Rule 23(b)(3)'s requirements: that (1) the question common to the class "predominate[s]," and (2) the class action mechanism is superior to other adjudication methods.

11

To evaluate predominance, the Court must first determine which issues of fact or law are common to the class and then weigh their predominance against individual questions that vary among class members. *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018). The common questions of law and fact in this case outweigh any questions which may differ among class members. The common factual questions (what measures did Cinfed take to secure personal data?) and the common legal questions (were Cinfed's actions negligent?) constitute the crux of the putative class claims. The only circumstances which may differ among class members are the measure of damages incurred from the data breach—something addressed by the two-tier claim system the settlement agreement creates (i.e., (1) reimbursements up to $5,000 per class member for documented monetary losses and (2) pro rata cash payments for all class members who submit valid claims).

As for superiority, the Court considers the difficulties of managing a class action, the alternative adjudication methods to a class action, and the nature of the class claims. *See id.* at 415–16. The claims at issue here are better addressed through a class action than via individualized claims. Were Cinfed required to litigate thousands of individual claims related to this data breach—even assuming every case settled—the costs associated with discovery for those cases would likely exceed the entirety of the common fund. A class-wide settlement in this case is efficient and superior to individualized litigation.

The Court finds that, at this preliminary stage, the common questions of law and fact predominate and that the class action vehicle is the superior method for

resolving Plaintiffs' claims. Accordingly, the Court preliminarily certifies the proposed nationwide class as defined in the settlement agreement. *See supra* note 2.

The Court provisionally appoints Plaintiffs Valencia R. Davis, Angela Whitterson, Kendall Burwick, Christopher Talbot-Jones, and Daniel Paige as class representatives. And upon considering the factors in Rule 23(g)(1), the Court concludes that Plaintiffs' counsel is experienced in handling class actions, knowledgeable on the applicable law, and will ably discharge their duties as class counsel. (*See* Doc. 22-1, #338–40 (documenting counsel's qualifications and history of handling data breach class actions)). Accordingly, the Court provisionally appoints Terence R. Coates of Markovits, Stock & DeMarco, LLC, and Philip J. Krzeski of Chestnut Cambronne PA as class counsel for the class. Lastly, the Court appoints Simpluris, Inc., as the settlement administrator.

## B. Fairness of the Proposed Settlement

The Court now considers Rule 23(e)(1)'s second prerequisite to preliminary class action settlement approval—the fairness of the proposed settlement. In assessing fairness, the Court considers whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the settlement adequately compensates the class; and (4) the settlement treats class members equitably relative to each other. *See Hawes I*, 2023 WL 8811499, at *10 (finding that Rule 23(e)(2)'s new factors subsume the factors described in *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

13

### 1. Adequacy of Representation

The Court finds, for the same reasons described above when preliminarily certifying a class, *see supra* Section A.1, that the class representatives and class counsel have adequately represented the interests of the class.

### 2. Arm's Length Negotiations

The Court is satisfied, based on class counsel's representation and the mutual concessions in the proposed settlement agreement, that the settlement was negotiated at arm's length and was not plagued by fraud or corruption. *See Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, Nos. 5:15-cv-2223, 3:15-cv-2673, 2018 WL 4539287, *2 (N.D. Ohio Sept. 21, 2018) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary." (cleaned up)).

### 3. Adequacy of Relief

The Court finds that the settlement agreement adequately compensates the class. Rule 23(e)(2)(C) instructs the Court to consider: (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class"; and (3) "the terms of any proposed award of attorney's fees."[5]

The costs and risks of litigation would be substantial for both Cinfed and Plaintiffs. Cinfed would face substantial discovery costs related to the data breach and could risk a significant adverse judgment by proceeding to trial. The class, alternatively, risks recovering nothing if it cannot substantiate that Cinfed failed to

---

[5] The parties identified no agreements (other than the Settlement Agreement) that are relevant to the Court's consideration, so the fourth adequacy of relief prong is not relevant. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

adequately protect the data or that the data breach poses risks to the individuals whose PII was compromised. Settlement provides an efficient resolution of class claims by providing recovery to the class and net cost-savings for Cinfed.

Because this class action involves unauthorized access to PII that Cinfed holds—information which, by its nature, identifies class members—the Court anticipates little difficulty in disseminating notice and providing payments to the class. Moreover, the settlement provides a two-tier system that aims to appropriately compensate class members: The agreement will first compensate any class members who can show they have suffered actual losses traceable to the data breach, up to a $5,000 cap per individual. (Doc. 21-1, #253). All other class members will receive a pro rata cash payment, assuming they file a valid claim. (*Id.*). The Court finds that this method of relief effectively compensates class members for their respective losses. *See Hawes I*, 2023 WL 8811499, at *12 (noting that a settlement agreement with differing tiers of claims was fair because "it is reasonable to allocate settlement funds to class members based on the strength of their claims on the merits" (cleaned up)).

Lastly, the attorneys' fees award does not weigh against the adequacy of class recovery.[6] *Id.* (explaining that class action settlements that do not provide guaranteed amounts of attorneys' fees do not create adequacy-of-relief concerns

---

[6] The Court highlights, though, that, much as with the potential service awards, the Court intends to scrutinize the amount of attorneys' fees actually sought as part of the final approval process. (*See* Doc. 21-1, #264–65).

15

because the Court must separately award attorney's fees and can account for their fairness at that juncture).

### 4. Equitable Treatment Among Class Members

The Court finds that the settlement largely treats the class members equitably relative to each other. Save for those class members who can prove specific out-of-pocket losses, the settlement agreement compensates all absent class members equally. *Id.* (noting a tiered-claims settlement is equitable if based on the strength of class member's claims).

That said, as already noted, the Court has some concerns about the impact of class representative service awards on the question of equitable treatment. True, the settlement agreement does not provide a fixed service award, but rather states that the class representatives intend to *seek* service awards totaling $2,000 apiece. (Doc. 21-1, #264). And on that front, this Court has previously noted that the *possibility* of service awards alone does not give rise to equitability concerns grave enough to endanger a settlement's approval. *Hawes I*, 2023 WL 8811499, at *12–*13.

But the Court takes the opportunity here to flag for the parties its reluctance to award the class representatives some thirty times the baseline pro rata recovery of absent class members based solely on their joining this lawsuit as named plaintiffs. Service awards, to the extent they are permissible, must be no larger than necessary to overcome the collective action concerns that may otherwise prevent potential class members from stepping forward as class representatives. *See Hawes II*, 2024 WL 2125640, at *6. They are meant to compensate the class representatives for services

16

they have provided to the class, not to provide a windfall to those class representatives. *Id.* And in cases where class representatives have not had to meaningfully work to further the litigation, particularly cases that have not proceeded through the discovery phase, the burden on the class representatives to show the fairness of a service award is high. *See id.* at \*6–\*7 (awarding one class representative a greater amount than two others because the former prepared for and sat through a deposition).

**C.     Proposed Notice Plan**

The Court now considers the adequacy of the notice plan. "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (cleaned up). And the notice must also be "reasonably calculated to reach interested parties" to satisfy due process. *Id.* at 514 (cleaned up). Moreover, Rule 23(c)(2)(B) dictates that the notice describe: "the nature of the action"; "the definition of the class certified"; "the class claims, issues, or defenses"; that any class member may enter an appearance through an attorney or opt out; "the time and manner for requesting exclusion"; and "the binding effect of a class judgment on members under Rule 23(c)(3)."

The Court has examined the proposed notice here and finds that it satisfies due process. The short-form notice provides the class definition,[7] discusses the data breach that caused the lawsuit, describes the common fund the settlement creates (along with the distribution scheme for the two types of claims), and directs the reader to visit the settlement website. (Doc. 21-1, #305). It also informs the class member how to submit a claim form, to opt out, or to object. (*Id.*). The short-form notice is easy to understand and conforms to *Fidel*'s requirements. The long-form notice meets the same standard. (*See id.* at #287–94). Lastly, the notice plan, which predominately relies on mailing notice, supplemented with a settlement website and telephone hotline, is reasonably calculated to reach the class members and takes the same approach as many other notice plans. *See, e.g., Carmen v. Health Carousel, LLC*, No. 1:20-cv-313, slip op. at 30–31 (S.D. Ohio June 18, 2024) (located at docket entry 86).

Accordingly, the Court approves the notice plan. Cinfed will provide a list of class members to the settlement administrator by September 24, 2024. Before commencing providing notice to the class members as described in the next sentence, the settlement administrator shall post this Opinion and Order, the long-form notice, claim form, and proposed settlement agreement on the settlement website. The settlement administrator shall commence providing notice by October 10, 2024, and shall substantially complete the notice process within ninety days of this Opinion and

---

[7] Although sufficient for due process purposes, the Court **ORDERS** the parties to modify the class definition provided on the short-form notice to include language of notice (e.g., "… you are a Class Member if *you were notified* that your private information was potentially affected…").

18

Order.[8] Class members shall have until December 10, 2024, to opt out of the class, in the manner prescribed by the settlement agreement. All class members who do not timely submit a valid opt-out request will be bound by any final judgment this Court enters in this case and thereby enjoined from bringing or prosecuting any action relating to the claims released under the settlement. Any class member wishing to object must do so within ninety days after the entry of this Order. Class members shall have until January 8, 2025, to submit settlement claims, in the manner prescribed by the settlement agreement.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 21). The Court

- **PRELIMINARILY CERTIFIES**, for settlement purposes only, the nationwide class as defined in the settlement agreement, (Doc. 21-1, #245);

- **PRELIMINARILY APPROVES** the proposed settlement agreement, (*id.* at #240–77);

- **AUTHORIZES** the distribution of notice in accordance with the notice plan described in the settlement agreement, (*id.* at #256–61);

---

[8] The Court notes that while one provision of the proposed agreement says that the administrator must "substantially complete[]" its provision of notice within ninety days of the entry of the preliminary approval order, (Doc. 21-1, #259), another term states that the "Notice Program … shall be completed within forty-five (45) days after entry of the Preliminary Approval Order," (Doc. 21-1, #261). The Court is unclear whether the reference to the "Notice Program" means something other than providing notice. Given the Court's confusion on this front, it adopted the longer of the two timelines, as set forth above.

- **PROVISIONALLY APPOINTS** Valencia R. Davis, Angela Whitterson, Kendall Burwick, Christopher Talbot-Jones, and Daniel Paige as class representatives;

- **PROVISIONALLY APPOINTS** Terence R. Coates of Markovits, Stock & DeMarco, LLC, and Philip J. Krzeski of Chestnut Cambronne PA as class counsel for the class;

- **PROVISIONALLY APPOINTS** Simpluris, Inc. as the settlement administrator;

- **ORDERS** that class members shall have ninety days from entry of this Opinion and Order to opt out of the class or to object to the proposed settlement, and one hundred twenty days to submit settlement claims;

- **ORDERS** that any class members who do not timely opt out of the settlement in the manner provided in the proposed settlement agreement will be bound by the terms of the settlement upon final approval of the same;

- **ORDERS** that the parties modify the class definition provided on the short-form notice to include language about receipt of notice; and

- **SCHEDULES** the final approval hearing for February 11, 2025, at 10:00 a.m., in Courtroom 805.

**SO ORDERED.**

September 10, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**