UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN RE: CINFED FEDERAL CREDIT UNION DATA BREACH LITIGATION | Case No. 1:23-cv-776<br><br>Judge Douglas R. Cole |

## OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT

Pursuant to this Court's preliminary approval order (Doc. 23), the undersigned, Brian P. O'Connor, Esq., submits the following objection to the parties' proposed class action settlement. The undersigned received a notice that he is a class member (Class Member ID 46122) and intends to appear at the Final Approval Hearing.

As explained below, the Court should decline to enter a judgment approving the proposed class action settlement because: (1) Plaintiffs failed their burden to establish the existence of subject-matter jurisdiction; (2) the Proposed Services Awards are not fair or reasonable; (3) the settlement agreement does not disclose Cinfed's "business practice changes" to the class members; (4) the monetary compensation is not fair, reasonable, and adequate; and (5) a one-third attorney fees request would be unreasonable.

**1. Plaintiffs failed their burden of establishing that subject-matter jurisdiction exists.**

As this Court correctly noted, "the parties did not bother to address" the issue of subject-matter jurisdiction. (Doc. 23, PageID 352). "Lawyers have a professional obligation to analyze subject-matter jurisdiction before judges need to question the allegations." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) (Easterbrook, C.J.). "[F]ederal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves

1

that jurisdiction to entertain an action exists, and the existence of federal jurisdiction may be questioned at any point in the course of litigation and … parties cannot waive the requirement of subject-matter jurisdiction." *Evanston Ins. Co. v. Hous. Auth. of Somerset*, 658 Fed. Appx. 799, 802 (6th Cir. 2016) (internal citations omitted).

The Consolidated Amended Class Action Complaint (Doc. 16, ¶12) offers only one paragraph of allegations concerning subject-matter jurisdiction. The Plaintiffs invoke the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and plead "[a]t least 1 class member is a citizen of a different state than Defendant." But Plaintiffs do not plead which state or states Defendant is a citizen of. On that failure alone the Plaintiffs have failed to satisfy their burden of establishing subject-matter jurisdiction. "A plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction" and "must state all parties' citizenship" when diversity is alleged. *Vaughn v. Holiday Inn Cleveland Coliseum*, 56 Fed. Appx. 249, 250 (6th Cir. 2003). Nor has the Defendant offered anything better. With no answer filed, the Court cannot discern whether the Defendant agrees that subject-matter jurisdiction exists or not.

At the preliminary approval stage, this Court *sua sponte* raised the unbriefed jurisdictional issue and concluded that minimal diversity exists. (Doc. 23, PageID 352). The Court reached that conclusion relying on only one case from another circuit, *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 350 (4th Cir. 2020). Further consideration of the issue may be warranted. As the Southern District of New York explained in *Parks Heritage Federal Credit Union v. Fiserv Solutions, Inc.*, 2017 U.S. Dist. LEXIS 1491, *9-10; 2017 WL 74280 (S.D.N.Y. Jan 4., 2017) when analyzing the citizenship of federal credit unions:

> "'The general rule with respect to federal credit unions is that they are not considered to be a citizen of any particular state for the purpose of establishing diversity of citizenship.'" *Broadbridge Fin. Solutions, Inc. v. CNBS, LLC*, No. 15-cv-4978 (PAC), 2016 U.S. Dist. LEXIS 37933, 2016 WL 1222339, at *1 (S.D.N.Y.

>Mar. 23, 2016) (quoting *TCT Fed. Credit Union v. Cumis Inc. Soc'y, Inc.*, No. 10-cv-150 (FJS/DRH), 2011 U.S. Dist. LEXIS 20371, 2011 WL 817496, at *2 (N.D.N.Y. Mar. 2, 2011)) (alterations omitted). "Rather, they are considered stateless 'national citizens' that are not amenable to § 1332(a) jurisdiction." *Id.* (citing *Auriemma Consulting Grp., Inc. v. Universal Sav. Bank, F.A.*, 367 F. Supp. 2d 311, 314-15 (E.D.N.Y. 2005)).
>
>There is, however, a "limited exception" to this rule. *See TCT Fed. Credit Union*, 2011 U.S. Dist. LEXIS 20371, 2011 WL 817496, at *2. Under this so-called "localization" exception, if a federal credit union's activities are "localized" within a single state, the credit union is deemed a citizen of that state for diversity purposes. E.*g., id.; Broadbridge Fin. Solutions, Inc.*, 2016 U.S. Dist. LEXIS 37933, 2016 WL 1222339, at *1. To have "localized" activities does not mean the credit union's activities are exclusive to a state. To determine whether a federal credit union is "localized" in a particular state, "courts consider the credit union's principal place of business, the location of branch offices, the volume of business transacted in different states, and 'any other evidence that tends to show the local or national nature [*10] of the corporation's plans and operations.'" *Broadbridge Fin. Solutions, Inc.*, 2016 U.S. Dist. LEXIS 37933, 2016 WL 1222339, at *1 (quoting *TCT Fed. Credit Union*, 2011 U.S. Dist. LEXIS 20371, 2011 WL 817496, at *2); *see also Arlington Cmty. Fed. Credit Union*, 57 F. Supp. 3d at 594 (quoting *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995))."

*See also Owens v. Cedar Point Fed. Credit Union*, 2022 U.S. Dist. LEXIS 242674 at *9 (N.D. Ga. Sept. 2, 2022) ("Cedar Point is a federally chartered credit union so it is technically not a citizen of any state for diversity jurisdiction purposes unless the corporation's activities are sufficiently localized in one state."). But here, Defendant's website reveals that it has multiple branches in both Ohio and Kentucky, and membership is eligible "to residents of 17 counties across Ohio, Kentucky, and Indiana." (http://www.cinfed.com/about/who-we-are/) (last accessed October 28, 2024). Defendant Cinfed thus does not satisfy the localization exception necessary to show that is a citizen of a single state. As such, Cinfed is a stateless national citizen. As a result, Plaintiffs cannot invoke jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2)(A), because any member of a class of plaintiffs is not a citizen of a State different from any defendant – to the contrary, the defendant is stateless.

3

Recognizing the lack of significant or binding caselaw to address these issues, this Court should instead simply determine that Plaintiffs failed their burden to establish that subject-matter jurisdiction exists in this federal court. Having failed that burden with a complaint and settlement papers that gloss over jurisdiction, this Court should not *sua sponte* resolve novel legal questions that the parties themselves ignore. Instead, the Court should deny the motion to approve a class action settlement and decline to enter a final judgment in a federal case in which the Plaintiffs have failed to satisfy their burden of establishing this Court's subject-matter jurisdiction.

2. **The proposed Service Awards are not fair or reasonable.**

The proposed settlement agreement indicates that each Class Representative may request up to $2,000 as a Service Award, which will be paid from the Settlement Fund. (Settlement Agreement, Section 1.34, Doc. 21-1, PageID 250). In this Court's Preliminary Approval Order (Doc. 23), the Court correctly:

> "flag[ged] for the parties its reluctance to award the class representatives some thirty times the baseline pro rata recovery of absent class members based solely on their joining this lawsuit as named plaintiffs. Service awards, to the extent they are permissible, must be no larger than necessary to overcome the collective action concerns that may otherwise prevent potential class members from stepping forward as class representatives. They are meant to compensate the class representatives for services they have provided to the class, not to provide a windfall to those class representatives. And in cases where class representatives have not had to meaningfully work to further the litigation, particularly cases that have not proceeded through the discovery phase, the burden on the class representatives to show the fairness of a service award is high."

(PageID 362-63) (internal citations omitted). The undersigned echoes the Court's concerns and objects to any settlement that would award the representatives who did essentially nothing exponentially more than absent class members. This objection is submitted nearly two months after the Court flagged these concerns to the parties, and still nothing is on the docket providing

4

any evidentiary basis for the sizeable incentive awards. For this reason, the Plaintiffs' motion to approve a settlement agreement providing for self-serving Service Awards should be denied.

3. **The Settlement Agreement is not fair, reasonable, or adequate because it does not disclose to absent class members the "business practice changes" that Defendant supposedly undertook to protect class members' private information in the future.**

Section 2.3 of the Settlement Agreement provides that "Cinfed provided Plaintiffs with documentation regarding the Data Incident and the security business practice changes that Cinfed has made to improve its information security posture following the Data Incident." Nowhere is this documentation or information shared with members of the putative Class. The item is clearly material to the settlement agreement – if it were not a material term then there would be no reason to include a section discussing it in the settlement agreement. Yet the substance of this material term is undisclosed to the members of the putative Class. The absent class members have no knowledge of what Cinfed did or did not do to improve its informational security posture, or whether the Plaintiff class should have sought injunctive relief under Fed. R. Civ. P. 23(b)(2) concerning the same. Without reasonable disclosure to the absent class members, those class members have no principled basis from which to determine whether the settlement (and the release) is fair, reasonable, and adequate.

4. **The monetary compensation in the proposed settlement agreement is not fair, reasonable, or adequate.**

If approved, the Defendant's total settlement payment would be $700,000 (Settlement Agreement, Section 8.1) ("For the avoidance of doubt… Defendant Cinfed's liability shall not exceed Seven Hundred Thousand Dollars and No Cents"). The Parties assert that the "Class is comprised of approximately 58,000 individuals nationwide." (Doc. 21, PageID 220). The settlement sum would thus average $12.06 per class member. In short, the settlement would allow

Defendant to obtain broad releases of claims from 58,000 persons for a per-person cost of less than one overdraft fee. (https://www.cinfed.com/schedule-of-fees) (last accessed October 28, 2024). Worse, deducted from the proposed Settlement Fund would be costs, expenses, and attorney fees. The Settlement Agreement indicates that $248,333.33 in fees and expenses may first be deducted from the Settlement Fund before any distribution to the class members, leaving only $451,666.67 to distribute to 58,000 class members ($7.79 per person). That paltry sum is not fair, reasonable, or adequate.

Perhaps contributing to the paucity of Settlement Funds is the docket's indication that this case was not truly prosecuted by Class Counsel. The docket and the settlement papers indicate a timeline devoid of true prosecution of the asserted claims. The Complaint in the lead action was filed November 22, 2023 (Doc. 23). After sorting out related cases and the appointment of interim class counsel, the consolidated class action complaint was filed on February 26, 2024 (Doc. 16). Shortly thereafter, on March 7, 2024, the parties stipulated to the entry of a protective order (Doc. 18). Based on the undersigned's review, the record does not indicate when informal discovery was produced to the Plaintiffs,[1] but it is reasonable to assume that the production occurred only after entry of the protective order on March 7, 2024. Only thirteen business days after the protective order was entered, on March 26, 2024, the parties attended mediation (Doc. 21-1, PageID 242). Eleven business days after that, on April 10, 2024, the parties had reached an agreement. *Id*. The record reveals no depositions. No exchange of formal discovery. Not even a responsive pleading from the Defendant. As the Northern District of Ohio recently opined, "it would be extraordinary if the parties could demonstrate that a settlement was fair and reasonable despite the following:

---

[1] As of the date of this objection, the docket does not contain any time records or summary from Plaintiffs' counsel describing the amount of work they performed or the timeline in which it occurred.

6

incomplete written discovery; no testimony under oath from any Defendant or other witness; incomplete privilege logs []; an incomplete forensic examination [] and; an inadequate period to review and analyze the documents that were provided." *Miller v. Anderson*, 2022 U.S. Dist. LEXIS 121425 *7 (N.D. Ohio July 5, 2022). Instead, it appears Defendant intends to obtain a class-wide release impacting 58,000 persons for nuisance value, and Class Counsel and Plaintiffs are content to receive their substantial award of attorney fees and Service Awards after having failed to prosecute the case.

**5. The award of attorney fees for Class Counsel is unreasonable.**

As of the date of this objection, Class Counsel have not filed a motion for attorney fees. As such, the undersigned objector cannot fairly evaluate the proposed request or the evidence in support thereof. Nonetheless, the Settlement Agreement contemplates an award of one-third of the Settlement Fund (i.e. $233,333.33). This would be unreasonable. "As a general matter, 'a majority of common fund class action fee awards fall between twenty and thirty percent." *In re Black Farmers Discrimination Litig.*, 953 F. Supp.2d 82, 98 (D.D.C. 2013) (collecting nationwide cases). In this case, where no formal discovery occurred, where the pleadings are not even closed, and where the parties did not even bother to address subject-matter jurisdiction, an upward deviation from the general range would be inappropriate.

7

**WHEREFORE**, Objector, Brian P. O'Connor, Esq., respectfully requests that this Court deny the motion to approve the proposed class action settlement agreement.

Respectfully submitted,

/s/ Brian P. O'Connor
Brian P. O'Connor (0086646)
600 Vine Street, Suite 2700
Cincinnati, Ohio  45202
513.721.4450 – phone
bpo@santenhughes.com
*Objector Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2024, I filed this Objection on the Court's CM/ECF system which will service electronic notice on all parties of record.

/s/ Brian P. O'Connor
Brian P. O'Connor (0086646)

696941.1