## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| *In re Cinfed Federal Credit Union Data Breach Litigation* | Case No.: 1:23-CV-776 |
| | Judge Douglas R. Cole |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ vii

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT ............................1

MEMORANDUM IN SUPPORT.................................................................................................2

I.       INTRODUCTION ...............................................................................................................2

II.      INCORPORATION BY REFERENCE ...........................................................................3

III.    BACKGROUND .................................................................................................................3

IV.    SETTLEMENT TERMS ....................................................................................................4

V.     NOTICE TO THE CLASS .................................................................................................4

       A.      Notice Program ..........................................................................................................4

       B.      Settlement Website and Toll-Free Telephone Number...............................................5

       C.      Effectiveness of Notice ..............................................................................................6

VI.    LEGAL ARGUMENT.........................................................................................................7

       A.      It is Appropriate to Apply Ohio Law to Substantive Issues ...................................7

             1.     The Court may apply Ohio law based on the reasonable choice of law in the Settlement Agreement, since Ohio is the residence of most Class Members and of Defendant, and has the most significant relationship to the claims at issue in this case...........................................................................7

The Court should apply Ohio law on the basis of the Settlement Agreement's reasonable choice-of-law provision. *Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016); *Hawes v. Macy's Inc.*, No. 1:17-CV-754, 2023 WL 8811499 (S.D. Ohio Dec. 20, 2023). This choice was reasonable because Ohio is the domicile of most Class Members and the location of Defendant's principal place of business and operations, and has the most significant relationship to the claims at issue. *Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2023 WL 6383467 (S.D. Ohio Sept. 29, 2023); *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286 (Ohio 1984); *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206 (Ohio 2001).

             2.     There are no relevant differences in the State laws that could potentially apply to the claims at issue, and nothing prevents the application of Ohio law in the context of settlement ....................................................................10

Differences in State substantive law are only relevant to class certification if they are pertinent to the issues in the case. *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997). They are scarcely of concern at all in the settlement context. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011); *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37 (D.D.C. 2010). In any event, Ohio does not relevantly differ from other applicable State law as to unjust enrichment or implied contract (*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009); *Hawes*, 2023 WL 8811499; *J. Bowers Constr. Co. v. Gilbert*, 18 N.E.3d 770 (Ohio Ct. App. 2014); *Brooks v. Peoples Bank*, 732 F. Supp. 3d 765 (S.D. Ohio 2024)), or as to negligence (*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re Telectronics*, 172 F.R.D. 271).

B.    Final Certification of the Settlement Class is Appropriate ...................................12

    1.    The Elements of Rule 23(a) and Rule 23(b)(3) Are Satisfied ..................12

The basis on which the Court granted preliminary class certification is unchanged, and there are no changes in the facts or law that would warrant a reconsideration of the Court's analysis. *In re Advoc. Aurora Health Pixel Litig.*, No. 22-CV-1253, 2024 WL 3357730 (E.D. Wis. July 10, 2024).

C.    The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances and was Successful .........................12

The notice given to the class be the best practicable under the circumstances, which must be done individually to those identifiable by reasonable effort. Fed. R. Civ. P. 23(c)(2); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175 (1974). The court must consider the manner and content of the notice given, and has virtually complete discretion over the manner used. *Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327 (S.D. Ohio May 30, 2013); *Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981). In this case, the notice program reached approximately 96.8% of class members, leading to a current claims rate of 4.34%, both of which are reasonable in the context of a data breach case, and satisfied due process. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018).

D.    The Settlement Agreement Merits Final Approval ................................................14

    1.    The Settlement Resulted from Mediated, Arm's-Length Negotiations without any Risk or Evidence of Fraud or Collusion ...........15

Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 (4th Ed. 2002); *Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589 (S.D. Ohio Mar. 10, 2017).

2.      The Complexity, Expense, Likely Duration of the Litigation, and Substantial Risk for Plaintiffs Warrant Final Approval of the Settlement ...............................................................................................16

The most important factor in assessing the fairness of the settlement is the likelihood of success on the merits. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235 (6th Cir. 2011). This must be weighed against the relief offered in the settlement. *Carson v Am. Brands, Inc.*, 450 U.S. 79 (1981); *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075 (6th Cir. 1984). If a settlement is not clearly inadequate, approval is preferable to lengthy, uncertain litigation. *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011). Data breach cases face substantial hurdles at the pleading, summary judgment, and class certification stages. *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021). This Settlement is fair and reasonable when weighed against the cost, length, and uncertain outcome of continued litigation.

3.      The Fact that Plaintiffs and Counsel for Plaintiffs and Defendant Recommend Approval of the Settlement Strongly Indicates that the Settlement is Fair, Reasonable, and Adequate ...........................................18

Experienced counsel's recommendations of a settlement are entitled to deference, *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), as are those of class representatives intimately involved in the case, *Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014), *R. & R. adopted*, 2014 WL 3543819 (July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016).

4.      The Class's Reaction Overwhelming Supports the Settlement .................19

There have been no exclusion requests, only one objection, and 2,512 claims made by Class Members.

a.   *Objector O'Connor's Spray-Shot Objection Should be Overruled* ...........................................................................................19

i.   Subject Matter Jurisdiction is Established in this Case ................20

Defendant is an Ohio citizen as a federal credit union whose principal place of business is in Ohio. *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344 (4th Cir. 2020). The Court has jurisdiction under 28 U.S.C. § 1332(d)(2) ("CAFA"). Since fewer than two-thirds of the Class are Ohio residents, CAFA's Home State Exception does not apply. 28 U.S.C. § 1332(d)(4)(B). Objector's argument based on *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603 (11th Cir. 1995) are unavailing, because it addresses another basis for diversity jurisdiction not at issue in this case.

ii. The Requested Service Awards are Modest, Justified, and Reasonable ................................................................... 22

The evidentiary basis for the Service Awards is contained in Plaintiffs' Declarations in support of their Motion for Attorneys' Fees, which detail their substantial contribution to prosecuting this case on behalf of the Class. The requested amount is modest in comparison to those awarded in numerous other data breach cases. *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-CV-3499, 2024 WL 958726 (S.D. Ohio Mar. 5, 2024); *Tucker v. Marietta Area Healthcare, Inc.*, No. 2:22-cv-00184 (S.D. Ohio Dec. 8, 2023).

iii. The Business Practice Changes Routinely Are Not Publicized in Data Breach Class Action Settlements .................... 24

Cybersecurity enhancements that defendants in data breach cases have agreed to implement are generally not publicized in public filings, in order to guard against further breaches.

iv. The Monetary Compensation is Fair and Reasonable and Consistent with the Monetary Compensation Approved in Other Data Privacy Class Action Settlements ............................... 24

An objection that recovery is too low is routinely rejected by courts, because objectors can exclude themselves to seek higher recovery. *Ryder v. Wells Fargo Bank, N.A.*, No. 1:19-CV-638, 2022 WL 223570 (S.D. Ohio Jan. 25, 2022); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1042 (S.D. Cal. 2017). If settlements offer meaningful recovery under the circumstances, given the inherent nature of any settlement as a compromise, such objections are overruled. *Bechtel v. Fitness Equipment Services, LLC*, No. 1:19-cv-00726 (S.D. Ohio Sept. 30, 2022); *Abadilla v. Precigen, Inc.*, No. 20-CV-06936, 2023 WL 7305053 (N.D. Cal. Nov. 6, 2023). The *pro-rata* cash payment in this case is well within the range of reasonableness for comparable cases. *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 235 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

v. The Attorneys' Fee Request of One-Third of the Settlement Fund is Fair and Reasonable and Routinely Approved ................. 27

Courts in this Circuit routinely approve fees of one-third of a settlement fund in data breach class actions. *In re CorrectCare Data Breach Litig.*, No. CV 5:22-319, 2024 WL 4211480, (E.D. Ky. Sept. 17, 2024); *Marietta Area Health Care*, No. 1:11-cv-184 (S.D. Ohio Dec. 8, 2023). In this case, the Motion for Fees, filed after the Objection, details lodestar and expense amounts for all Plaintiffs' Counsel, showing a modest multiplier of 1.13, which is reasonable and fair.

5.      This Settlement Serves the Public Interest..................................................28

There is a strong public interest in settlement of complex litigation and class action suits because they are difficult and unpredictable, and settlement conserves judicial resources. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). This Settlement does so while avoiding uncertainty and providing meaningful recovery to the Class.

6.      The Other Rule 23(e) Factors Support the Settlement..............................29

Class Representatives and Counsel have adequately represented the Class, as shown by the relief obtained and the lack of serious objections. Fed. R. Civ. P. 23(e)(2)(C)(i). The Settlement offers effective processing and distribution of Class Members' claims and benefits. Fed. R. Civ. P. 23(e)(2)(C)(ii). The attorneys' fees requested are reasonable and will not be paid until after the Effective Date. Fed. R. Civ. P. 23(e)(2)(C)(iii). There is no undisclosed agreement related to the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv). The Settlement treats Class Members equitably, as all are eligible for the same *pro-rata* payment. Fed. R. Civ. P. 23(e)(2)(D).

VII.    CONCLUSION....................................................................................................29

CERTIFICATE OF SERVICE ......................................................................................31

## **TABLE OF AUTHORITIES**

**Cases**

*Abadilla v. Precigen, Inc.*,
    No. 20-CV-06936, 2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ........................................... 25

*Amos v. PPG Indus., Inc.*,
    No. 2:05-cv-70, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) .............................................. 16

*Bailey v. Great Lakes Canning, Inc.*,
    908 F.2d 38 (6th Cir. 1990) ...................................................................................................... 14

*BCBSM, Inc. v. Walgreen Co.*,
    642 F. Supp. 3d 732 (N.D. Ill. 2022) ....................................................................................... 21

*Brent v. Midland Funding, LLC*,
    No. 3:11-CV-1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011)................................... 16, 28

*Brooks v. Peoples Bank*,
    732 F. Supp. 3d 765 (S.D. Ohio 2024) .................................................................................... 11

*Carson v Am. Brands, Inc.*,
    450 U.S. 79 (1981)..................................................................................................................... 16

*Cheryl Gaston v. FabFitFun, Inc.*,
    No. 2:20-CV-09534, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) .......................................... 17

*Doe v. Ohio*,
    No. 2:91-CV-464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020)
    *R. & R. adopted*, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020) ................................................ 15

*Eastman v. Marine Mech. Corp.*,
    438 F.3d 544 (6th Cir. 2006) .................................................................................................... 20

*Eisen v. Carlisle & Jacqueline*,
    417 U.S. 156 (1974)................................................................................................................... 13

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
    137 F.R.D. 240 (S.D. Ohio 1991) ............................................................................................ 28

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981) .................................................................................................. 13

*Free Range Content, Inc. v. Google, LLC*,
    No. 14-CV-02329, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019).......................................... 25

*Gascho v. Glob. Fitness Holdings, LLC*,
  No. 2:11-CV-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014),
  *R. & R. adopted*, 2014 WL 3543819 (July 16, 2014),
  *aff'd*, 822 F.3d 269 (6th Cir. 2016) ........................................................................ 19

*Granada Investments, Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ................................................................................ 15

*Hainey v. Parrott*,
  617 F. Supp. 2d 668 (S.D. Ohio 2007) .................................................................... 28

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ............................ 17

*Haney v. Charter Foods N., LLC*,
  No. 2:23-CV-168, 2024 WL 4054361 (E.D. Tenn. Aug. 28, 2024) ........................... 9

*Hawes v. Macy's Inc.*,
  No. 1:17-CV-754, 2023 WL 8811499 (S.D. Ohio Dec. 20, 2023) .................... 7, 8, 11

*Hoving v. Lawyers Title Ins. Co.*,
  256 F.R.D. 555 (E.D. Mich. 2009) .......................................................................... 10

*In re Advoc. Aurora Health Pixel Litig.*,
  No. 22-CV-1253, 2024 WL 3357730 (E.D. Wis. July 10, 2024) ............................. 12

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ....................................................................... 11, 13

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................. 16, 17

*In re Auto. Parts Antitrust Litig.*,
  No. 12-CV-00103, 2016 WL 8200511 (E.D. Mich. Aug. 9, 2016) ......................... 12

*In re Black Farmers Discrimination Litig.*,
  953 F. Supp. 2d 82 (D.D.C. 2013) .......................................................................... 27

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................... 28

*In re CorrectCare Data Breach Litig.*,
  No. CV 5:22-319, 2024 WL 4211480 (E.D. Ky. Sept. 17, 2024) ........................... 27

*In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*,
  No. 3:05-MD-527, 2017 WL 1735578 (N.D. Ind. Apr. 28, 2017) ........................... 25

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
  726 F.2d 1075 (6th Cir. 1984) ................................................. 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013) .................................................. 17

*In re Nationwide Fin. Servs. Litig.*,
  No. 2:08-CV-00249, 2009 WL 8747486 (S.D. Ohio Aug. 18, 2009) ..................................... 28

*In re Numotion Data Incident Litig.*,
  No. 3:24-CV-00545, 2025 WL 57712 (M.D. Tenn. Jan. 9, 2025) ........................................... 9

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  No. 3:15-MD-2633, 2019 WL 3410382 (D. Or. July 29, 2019)............................................ 10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  No. 14-md-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) ............................................ 13

*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ....................................... 28

*In re Telectronics Pacing Sys., Inc.*,
  172 F.R.D. 271 (S.D. Ohio 1997) ........................................ 10, 11

*J. Bowers Constr. Co. v. Gilbert*,
  18 N.E.3d 770 (Ohio Ct. App. 2014) ......................................... 11

*Jackson v. Nationwide Ret. Sols., Inc.*,
  No. 2:22-CV-3499, 2024 WL 958726 (S.D. Ohio Mar. 5, 2024)............................................ 23

*Lewis v. Huntington Nat'l Bank*,
  No. 2:11-CV-00058, 2013 WL 12231327 (S.D. Ohio May 30, 2013) ..................................... 13

*Lloyd v. Navy Fed. Credit Union*,
  No. 17-CV-1280, 2019 WL 2269958 (S.D. Cal. May 28, 2019) ............................................ 21

*Lonardo v. Travelers Indem. Co.*,
  706 F. Supp. 2d 766 (N.D. Ohio 2010)................................................. 14

*Long v. HSBC USA Inc.*,
  No. 14 CIV. 6233, 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015)............................................ 17

*Loyola Fed. Sav. Bank v. Fickling*,
  58 F.3d 603 (11th Cir. 1995) ............................................... 22

*Marro v. New York State Teachers' Ret. Sys.*,
  No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ..................................... 26

*Martin v. Reid*,
 818 F.3d 302 (7th Cir. 2016) ............................................................................ 7

*Miller v. Baltimore Builders Supply & Millwork, Inc.*,
 No. 2:21-cv-4867, 2023 WL 6554073 (S.D. Ohio Sept. 13, 2023) ......................... 28

*Miracle v. Bullitt Cnty., Ky.*,
 No. CIV.A. 05-130, 2008 WL 3850477 (W.D. Ky. Aug. 15, 2008) ................... 16, 17

*Morgan v. Biro Mfg. Co., Inc.*,
 474 N.E.2d 286 (Ohio 1984) ............................................................................... 9

*Navy Fed. Credit Union v. LTD Fin. Servs., LP*,
 972 F.3d 344 (4th Cir. 2020) ............................................................................. 20

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
 315 F.R.D. 226 (E.D. Mich. 2016) ..................................................................... 26

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
 292 F. Supp. 3d 1018 (S.D. Cal. 2017) ............................................................... 25

*Ohayon v. Safeco Ins. Co. of Ill.*,
 747 N.E.2d 206 (Ohio 2001) ............................................................................... 9

*Pansiera v. Home City Ice Co.*,
 No. 1:19-CV-1042, 2024 WL 813759 (S.D. Ohio Feb. 27, 2024) ......................... 24

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*,
 636 F.3d 235 (6th Cir. 2011) ............................................................................. 16

*Prosper v. Navy Fed. Credit Union*,
 No. 1:22-CV-01301, 2022 WL 17541784 (N.D. Ga. Oct. 5, 2022) ....................... 21

*Prosper v. Navy Fed. Credit Union*,
 No. 1:22-CV-01301, 2022 WL 18780929 (N.D. Ga. Nov. 16, 2022),
 *R. & R. adopted*, 2022 WL 18780943 (N.D. Ga. Dec. 12, 2022) ......................... 21

*Radosti v. Envision EMI, LLC*,
 717 F. Supp. 2d 37 (D.D.C. 2010) ....................................................................... 8

*Roland v. Convergys Customer Mgmt. Grp. Inc.*,
 No. 1:15-CV-00325, 2017 WL 977589 (S.D. Ohio Mar. 10, 2017) ....................... 15

*Rosado v. Ebay Inc.*,
 No. 5:12-CV-04005, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ....................... 25

*Ryder v. Wells Fargo Bank, N.A.*,
 No. 1:19-CV-638, 2022 WL 223570 (S.D. Ohio Jan. 25, 2022) ........................... 24

*Savidge v. Pharm-Save, Inc.*,
   727 F. Supp. 3d 661 (W.D. Ky. 2024) ............................................................. 17

*Schulke Radio Prods., Ltd., v. Midwestern Broad. Co.*,
   453 N.E.2d 683 (Ohio 1983) ............................................................................ 8

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ............................................................................ 10

*Tate v. EyeMed Vision Care, LLC*,
   No. 1:21-CV-36, 2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) .................... 9, 11

*UAW v. Gen. Motors, Corp.*,
   497 F.3d 615 (6th Cir. 2007) ........................................................................... 16

*Vassalle v. Midland Funding LLC*,
   708 F.3d 747 (6th Cir. 2013) ........................................................................... 14

*Vassalle v. Midland Funding, LLC*,
   No. 3:11-CV-00096, 2014 WL 5162380 (N.D. Ohio Oct. 14, 2014) ............... 13

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ........................................................................... 18

**Statutes**

28 U.S.C. § 1332(c)(1) ............................................................................................. 20, 21

28 U.S.C. § 1332(d)(2) ............................................................................................. 22

28 U.S.C. § 1332(d)(4)(B) ....................................................................................... 21

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... 3, 12, 14

Fed. R. Civ. P. 23(b)(2) ............................................................................................. 24

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 12

Fed. R. Civ. P. 23(c)(2) ............................................................................................. 12

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 13

Fed. R. Civ. P. 23(e) ................................................................................................. 13, 14, 29

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 14

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................... 29

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........................................................................... 29

Fed. R. Civ. P. 23(e)(2)(C)(iii) .......................................................................... 29

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................................... 29

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................ 29

Fed. R. Civ. P. 23(e)(3) ...................................................................................... 15

Fed. R. Civ. P. 23(f) ........................................................................................... 17

**Other Authorities**

1 Herbert B. Newberg & Alba Conte,
   *Newberg on Class Actions*, § 11.41 (4th ed. 2002) ........................................ 15, 28

4 Herbert B. Newberg & Alba Conte,
   *Newberg on Class Actions* § 11.50 (4th ed. 2002) ............................................ 16

Restatement (Second) of Torts § 281 (1965) ....................................................... 11

Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. a (2011) ............................. 11

Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. b (2011) ............................. 11

Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. e (2011) ............................. 11

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Under Fed. R. Civ. P. 23(e), and this Court's Preliminary Approval Order (ECF No. 23), Plaintiffs Valencia R. Davis, Angela Whitterson, Kendall Burwick, Christopher Talbot-Jones, and Daniel Paige (collectively "Plaintiffs" and "Class Representatives") individually and on behalf of themselves and all others similarly situated, respectfully move this Court for Final Approval of the preliminarily-approved Class Action Settlement. The $700,000 non-reversionary Settlement Fund is a solid recovery for the approximately 58,000 Class Members, and is fair, reasonable, and adequate.

In support thereof, Plaintiffs rely upon the following Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; the Declaration of Terence R. Coates in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Coates Final Approval Decl."), attached as **Exhibit 1**; the Settlement Administrator Declaration ("Simpluris Decl."), attached as **Exhibit 2**; Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 21), previously granted (ECF No. 23); Plaintiffs' Motion for Attorneys' Fees, Expenses and Class Representative Service Awards (ECF No. 25); records, pleadings, and papers filed in this action; and such other evidence or argument as may be presented to the Court at or before the February 11, 2025 Final Approval Hearing or as soon as practicable thereafter. For the Court's convenience, a Proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 3**.

## MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

## I.    INTRODUCTION

The Class's meaningful recovery in this case is a $700,000 non-reversionary Settlement Fund designed to cover all settlement costs and provide two separate forms of monetary benefits to Class Members: (1) *pro rata* settlement payments (currently projected to be between $120-$168 per valid claimant)[1] from the net Settlement Fund (after the payment of any documented monetary losses as described herein, payment of attorneys' fees and expenses, the proposed Class Representatives' Service Awards, and the costs of Settlement Administration) to each Class Member who submits a claim and (2) reimbursement for documented out-of-pocket losses up to $5,000.00 per claimant, including without limitation, unreimbursed losses relating to fraud or identity theft; professional fees for attorneys, accountants, and credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the Data Breach, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. S.A., ¶ 2.1. Defendant also agreed to security business practice changes that will further protect Plaintiffs' and Class Members' Private Information in the future.

On September 10, 2024, the Court entered preliminary approval of the Settlement and conditionally certified the Class. *See* Opinion & Order Granting Preliminary Approval of Class Action Settlement. ECF No. 23. In doing so, the Court found the Settlement Agreement ("S.A.," ECF No. 21-1) was "fair, reasonable and adequate," and that the Notice Plan met the requirements

---

[1] Class Counsel provided a conservative estimate in the approved settlement notices of $65 per valid claimant based on a 10% claims rate. *See also* Coates Final Approval Decl., ¶ 7 (noting that the claim validation process is ongoing and Class Counsel expect to have a more specific *pro rata* cash payment amount by the Final Approval Hearing).

of Fed. R. Civ. P. 23 and due process, and provided the best notice practicable under the circumstances to all Class Members who could be identified through reasonable effort. *Id.* at PageID # 354-55, 363-64.

The Court-approved notice plan has now been executed and nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. As of January 17, 2025, of the 57,826[2] Class Members who were sent direct notice of the proposed settlement, one has filed an objection and none have requested to be excluded. Simpluris Decl., ¶¶ 21 ,22; *see also* Coates Final Approval Decl., ¶ 5. Because the Settlement is a reasonable result for the Class, particularly in view of the risks and delays involved in continued litigation and Defendant's arbitration agreements, Plaintiffs respectfully request that the Court grant final approval of the Settlement, grant Plaintiffs' pending Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (ECF No. 25), and enter a final order and judgment dismissing this case.

## II.    INCORPORATION BY REFERENCE

Plaintiffs incorporate by reference Plaintiffs' Unopposed Motion for Preliminary Approval ("Motion for Preliminary Approval") (ECF No. 21) and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (ECF No. 25).

## III.    BACKGROUND

Plaintiffs reference the Motion for Preliminary Approval (ECF No. 21, PageID # 218-223) and Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (ECF No. 25,

---

[2] The Class consists of 57,836 individuals. Simpluris Decl., ¶¶ 8, 16 at Table 1. The Settlement Administrator received over 57,953 files for potential Class Members from Defendant during the process of sending notice to the Class. *Id.* The Settlement Administrator then removed any files relating to Class Members who were included twice (the deduplication process) yielding 57,836 unique Class Members. *Id.*

PageID # 376-378) for a detailed explanation regarding the factual and procedural background that ultimately led to resolution of this matter.

## IV.    SETTLEMENT TERMS

Plaintiffs reference the Motion for Preliminary Approval (ECF No. 21, PageID # 514-516) for a thorough analysis on the benefits to the Settlement Class—*i.e.*, pro rata cash payments, out-of-pocket expenses up to $5,000, and enhanced data security practices.

## V.    NOTICE TO THE CLASS

### A.    Notice Program

Notice to the Settlement Class consisted of direct notice to individuals whose contact information (*i.e.*, mail or email) was in Defendant's possession. *See* Simpluris Declaration *passim*. Defendant had contact information for 57,836 Class Members. Simpluris Decl., ¶ 8.

Under the Parties' Agreement and the Preliminary Approval Order, Simpluris formatted the Postcard Notice to be sent by mail, formatted an electronic notice to be emailed to Class Members for whom Defendant had an email address, and a Long Form Notice to be posted on the Settlement Website. *Id.* ¶ 6. The Notice advised Settlement Class Members of their rights to submit a claim, request exclusion from the settlement, object to the settlement, or do nothing, and the implications of each such action. The Notices advised Settlement Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Settlement Class Members could obtain additional information. *Id.* ¶ 7.[3]

---

[3] The Court previously ordered the parties "to modify the class definition provided on the short-form notice" to include the following language: ". . . you are a Class Member if you were notified that your private information was potentially affected . . . ." ECF No. 23 at PageID # 364 n.7. The notices sent to Class Members included this modification. Simpluris Decl., at Exhibit C.

Upon receipt of the Class List, Simpluris reviewed the data to ensure it was in proper format for distributing the Notice via U.S. Mail. *Id*., ¶ 11. In an effort to ensure that the Notice would be delivered to class members, Simpluris compared the address data against the United States Postal Service ("USPS") National Change of Address ("NCOA") database and updated the data to a Settlement-specific database with the changes received from NCOA. *Id*. After review, Simpluris determined there were 8,725 records with an incomplete mailing address and performed a skip-trace to attempt to locate valid mailing addresses for these Settlement Class Members. *Id*., ¶ 15. Additionally, Simpluris conducted a thorough validation process to ensure the accuracy of emails provided. *Id*., ¶ 9. Simpluris was able to perfect email to 4,658 complete email addresses. *Id*., ¶ 10.

On October 10, 2024, Simpluris mailed the Postcard Notice to the 57,826 Settlement Class Members for whom a valid mailing address was available. *Id*., ¶ 14. As of January 27, 2024, 8,725 Postcard Notices have been returned by USPS. *Id*., ¶ 15. For the mailings returned without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. *Id*. Simpluris used the Class Member's name and previous address to locate a more current address. *Id*. Of the 8,725 returned Notices, 6,879 Notices were re-mailed to either an updated address or with forwarding addresses provided by USPS, and 1,846 Notices were determined to be undeliverable because no updated address was available. *Id*.

### B. Settlement Website and Toll-Free Telephone Number

Simpluris prepared and maintains a Settlement Website at www.cinfeddatasettlement.com that includes important dates and deadlines and Settlement-related documents, including the Class Action Settlement Agreement and Release, the Motion for Preliminary Approval, the Preliminary Approval Order, the Motion for Attorneys' Fees, Expenses, and Class Representative Service

Awards, and a downloadable version of the Notice of Class Action Settlement and Claim Form. *Id.*, ¶¶ 17-18. The Settlement Website has been active since October 10, 2024 and has been visited by 2,155 unique users and logged 6,994 page views. *Id.* ¶¶ 17-19.

A Settlement-specific toll-free telephone number was included in the notice and on the Settlement Website for the purpose of allowing Settlement Class Members to make inquiries regarding the Settlement. *Id.*, ¶ 20. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement administration. *Id.* The toll-free telephone number is included in the Notice. *Id.* This telephone number is active and has been available to the public. *Id.*

### C. Effectiveness of Notice

Simpluris calculates that between postcard notice through the USPS and email notice as described above, 96.8% of the Class received at least one form of notice. *Id.*, ¶ 16. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[4] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[5] These facts confirm that notice was distributed in a reasonable manner to all class members who would be bound by the settlement and satisfied the Constitution's Due Process requirements.

The deadline to submit a claim form was January 8, 2025. Simpluris Decl., ¶ 23. Simpluris received 2,512 claim forms (1,332 via mail and 1,173 via email) producing a claims rate of

---

[4] Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited Jan. 27, 2025). The guide suggests that the minimum threshold for adequate notice is 70%.

[5] Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 27, (Fed. Jud. Ctr., 3d Ed. 2010), https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf (last visited Jan. 27, 2025).

approximately 4.34%. *Id.*, ¶ 24; *see also* Coates Final Approval Decl., ¶ 5. The expected pro rata cash payout per Class Member is between $120-168 with this amount to be further clarified as Simpluris completes the claim validation process. Coates Final Approval Decl., ¶ 7.

## VI. LEGAL ARGUMENT

### A. It is Appropriate to Apply Ohio Law to Substantive Issues

**1. The Court may apply Ohio law based on the reasonable choice of law in the Settlement Agreement, since Ohio is the residence of most Class Members and of Defendant, and has the most significant relationship to the claims at issue in this case.**

Generally speaking, choice of law can have an impact on the propriety of class certification or the fairness of a settlement. At the preliminary approval stage, the Court applied Ohio law to the claims of putative class members. However, the Court instructed the parties to brief this issue in their request for final approval. ECF No. 23 at PageID # 353-354.

It was appropriate for the Court to apply Ohio law based on the choice of law provision in the Settlement Agreement. *See* S.A. at PageID # 272-273, ¶ 11.14 ("[T]he rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Ohio."); *cf. Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016) ("[T]he settlement agreement contained a choice-of-law clause, which specified the law of Illinois. Martin seems to have overlooked this point, when she asks in her brief, 'will variations in claimants' respective state laws be considered in determining the award?' The short answer is that those variations will not make a difference, because of the choice of a single law."); *see also Hawes v. Macy's Inc.*, No. 1:17-CV-754, 2023 WL 8811499, at *7 (S.D. Ohio Dec. 20, 2023) (holding that it was appropriate to apply Ohio law based on choice of law provision in settlement agreement).

7

The choice of law provision in a settlement agreement "governs unless 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice.'" *Hawes*, 2023 WL 8811499, at \*7, quoting *Schulke Radio Prods., Ltd., v. Midwestern Broad. Co.*, 453 N.E.2d 683, 686 (Ohio 1983). The Parties had a reasonable basis for choosing Ohio law in this case, because it is where Cinfed is headquartered and the majority of Class Members are domiciled. *See* Notice of Removal, Case No. 1:23-cv-00830, ECF No. 1 at PageID # 3 ¶¶ 12, 14 (S.D. Ohio) ("Cinfed … has its principal place of business in Cincinnati, Ohio…. Cinfed is a citizen of Ohio…. [A]pproximately 64% of the people who Cinfed identified as being potentially affected have Ohio addresses."); *cf. Hawes*, 2023 WL 8811499, at \*7 ("During the time that Macy's sold the sheets at issue in its stores, Macy's was headquartered in Ohio, and its operational decisions were presumably based there. The Court will therefore apply Ohio law in assessing the terms of the Settlement Agreement.") (internal citation omitted).

Regardless of the choice of law provision in the Settlement Agreement, it is appropriate to apply Ohio law for purposes of assessing the settlement because Ohio has the most significant relationship to the Plaintiffs' and Class Members' claims.[6] "'For tort actions, Ohio choice-of-law follows the Restatement of the Law of Conflicts, which turns on which state possesses the most significant relationship to the tort injury.' Factors relevant to the significant relationship test include the place of injury, the residence of the parties, and the place where the relationship of the

---

[6] Outside the settlement context, Cinfed would object to class certification on the grounds that the choice-of-law analysis is individualized. Assuming *arguendo* that variations in state law would prevent class certification outside of the settlement context, this would just be another factor weighing in favor of the settlement. *See Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 60 (D.D.C. 2010) ("Although this Court need not consider the manageability of a class action when certifying a class for settlement purposes, the Court notes that choice-of-law questions may render the class action unmanageable . . . without a settlement. This factor weighs in favor of approving the parties' agreement.").

parties is centered." *Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2023 WL 6383467, at *6 (S.D. Ohio Sept. 29, 2023), quoting *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 289 (Ohio 1984) (internal citation omitted). "For contract actions, the test is the same, where the factors bearing on the 'most significant relationship' include the place of contracting and negotiation, the place of performance, the location of the subject matter, and the residence of the parties." *Id.*, quoting *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 209 (Ohio 2001).

In *Tate*, this Court (in the context of a motion to dismiss) held that Ohio had "the most significant relationship" to common law and contract claims in a similar customer data breach action, explaining that:

> EyeMed is headquartered in Ohio and presumably carries out its operations there. A data breach is difficult to "place" in any physical location because such events, by their nature, occur over computer networks with the various actors located wherever they may choose to be. So the place of injury factor provides little value. Plaintiffs allege that they entered into an implied contract with EyeMed to protect their PII. But Plaintiffs themselves label the purported contract "implied," meaning there was no place of explicit negotiation or acceptance, so this factor is similarly unhelpful. That leaves the residence of the parties. The named Plaintiffs are scattered across two states and seek to certify a nationwide class, which would presumedly increase that count significantly. The Court therefore finds the residence of the defendant determinative—at least for present purposes. The Court accordingly applies Ohio law in assessing the plausibility of the tort and contract actions raised here.

*Id.* (internal citations omitted); *see also Haney v. Charter Foods N., LLC*, No. 2:23-CV-168, 2024 WL 4054361, at *6 (E.D. Tenn. Aug. 28, 2024) (Tennessee had the most significant relationship because the "data breach occurred in Tennessee, and Defendants, whose conduct is the common denominator . . ., are based in Tennessee."); *In re Numotion Data Incident Litig.*, No. 3:24-CV-00545, 2025 WL 57712, at *6-7 (M.D. Tenn. Jan. 9, 2025) (similar); *In re Premera Blue Cross*

*Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633, 2019 WL 3410382, at *14-15 (D. Or. July 29, 2019) (performing similar analysis in the settlement context).

Cinfed, like the defendant in *Tate*, is headquartered in Ohio. Furthermore, both cases involved claims for, *inter alia*, negligence, unjust enrichment, and breach of implied contract brought on behalf of customers who had their personal information stolen in a data breach. The Court should conclude for the same reasons that Ohio has the most significant relationship to the claims of Plaintiffs and Class Members in this case.

> **2.** **There are no relevant differences in the State laws that could potentially apply to the claims at issue, and nothing prevents the application of Ohio law in the context of settlement.**

Even if the Court were to revisit the logic of its holding in *Tate* and instead find that the law of each state applies, this would not impact the propriety of class certification or the fairness of the settlement. Importantly, "state law does not need to be universal in order to justify nationwide class certification." *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997). Instead, when "looking at the nuances of state law, it is important to distinguish between nuances that are pertinent to the issues being certified and those which are unimportant to these questions." *Id.* This is particularly relevant in the context of a settlement, which "largely marginalizes" any concerns about variations in state law. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302-03 (3d Cir. 2011) ("[T]he class settlement posture of this case largely marginalizes the objectors' concern that state law variations undermine a finding of predominance.").

There are no conflicts of law that prevent the application of Ohio law to claims for unjust enrichment or implied contract by a nationwide settlement class. *See Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 567-70 (E.D. Mich. 2009) (finding "few real differences" between unjust enrichment laws); *Hawes*, 2023 WL 8811499, at *7; *J. Bowers Constr. Co. v. Gilbert*, 18 N.E.3d

770, 774 (Ohio Ct. App. 2014); 1 *Willison on Contracts* §§ 1:6, 1:7 (4th ed. 2024); *cf.* Restatement (Third) of Restitution and Unjust Enrichment §§ 1 cmt. a, 4 cmts. b, e (2011).[7]

Similarly, "the common factual and legal issues relevant to Plaintiffs' negligence claims greatly outweigh any individualized differences. The elements of negligence would be familiar to any law student: (1) duty of care, (2) breach, (3) causation, and (4) damages." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 314 (N.D. Cal. 2018) (citing Restatement (Second) of Torts § 281 (1965)); *see also In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 291-93 (S.D. Ohio 1997) (certifying negligence claims under the law of 47 states over the defendant's objection and noting that "all states use the same elements to define a cause of action for negligence"). Data breach actions like this—especially in the context of a settlement—do "not implicate any of the state-specific issues that can sometimes creep into the negligence analysis." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 314. Instead, "the main issue boils down to the common factual contention of whether [Defendant's] data security levels were reasonable." *Id.* If Plaintiffs and the Class could prove that Defendant proximately caused the Data Breach (and that the Data Breach caused their alleged injuries), any variations in state law would not matter.

For these reasons, the Court should affirm its preliminary holding that Ohio law applies to substantive issues of law, and that variations in state law do not impact the propriety of class certification or the fairness of the settlement.

---

[7] Informal discovery before mediation showed that roughly 93.0% of Class Members are from Ohio or Kentucky. Coates Final Approval, Decl., ¶ 2. This District previously compared Ohio and Kentucky law in a data breach action, holding that it is appropriate to apply Ohio law to claims of unjust enrichment and breach of implied contract because there are no conflicts of law. *Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 777-78 (S.D. Ohio 2024). Although this District found that a conflict of law existed for purposes of the negligence claim, this was based on a misapplication of the economic loss doctrine. *Compare id.* at 778-79 (holding that the economic loss doctrine precludes a negligence claim under Ohio law but not Kentucky law) *with Tate*, 2023 WL 6383467, at *7 (the economic loss rule does not prevent a negligence claim based on an independent duty).

**B. Final Class Certification for Settlement Purposes is Appropriate**

This Court preliminarily approved class certification for Settlement purposes on September 10, 2024. ECF No. 23. At this juncture, final approval is appropriate.

### 1. The Elements of Rule 23(a) and Rule 23(b)(3) Are Satisfied.

Plaintiffs incorporate by reference § IV(B) in the Motion for Preliminary Approval to assert that class certification under Rule 23 is warranted for settlement purposes. Plaintiffs' rationale is unchanged and there are no changes in the facts or law that would warrant a reconsideration of the Court's analysis leading to preliminary certification. *Cf. In re Advoc. Aurora Health Pixel Litig.*, No. 22-CV-1253, 2024 WL 3357730, at *5 (E.D. Wis. July 10, 2024) ("The Court has no independent basis to question whether final certification of the class as previously defined or appointment of Plaintiffs as class representatives … is appropriate. Accordingly, the Court does not disturb its earlier finding that the settlement class in this matter meets the requirements of Rule 23(a) and (b) and that Plaintiffs are appropriate class representatives."). Instead, subsequent events reinforce the Court's prior determination, warranting certification for final approval.

**C. The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances and was Successful.**

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). The latter rule requires that notice to the class be the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2); *see also In re Auto. Parts Antitrust Litig.*, No. 12-CV-00103, 2016 WL 8200511, at *9-10 (E.D. Mich. Aug. 9, 2016) (notice program satisfied Rule 23 and due process). "The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient." *Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013), citing Fed. Jud. Ctr., *Manual for Complex Litig.* § 21.312 (4th ed. 2004). There is no statutory or due-process

requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete discretion" as to the manner of service of settlement notice. *Franks v. Kroger Co.*, 649 F.2d 1216, 1223-23 (6th Cir. 1981); *see also Vassalle v. Midland Funding, LLC*, No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) (same).

As detailed *supra* §V, Class Counsel worked closely with the Settlement Administrator to develop and implement the notice program preliminarily approved by the Court. The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). Doc. 24-2 (PageID # 572-587). The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the Settlement. Simpluris Decl., Ex. C.

The Settlement Administrator estimates that between direct notice and other forms of notice, the notice program reached approximately 96.8% of the Class. Simpluris Decl., ¶¶ 20-21. The current claims rate of 4.34% is reasonable in the data breach context and a multiplier of what is considered "reasonable" in the data breach context. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving data breach settlement with a claims rate of roughly 0.23%); *Hightower v. Receivable Performance Management*, No. 2:22-cv-01683, ECF No. 84-85 (W.D. Wash Dec. 13, 2024)

(granting final approval of settlement with .65% claims rate and granting motion for attorney fees, expenses, and service awards); *see also* Coates Final Approval Decl., ¶ 6.

The notice program satisfies the structures of Rule 23 and due process and should be approved by the Court.

### D. The Settlement Agreement Merits Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the Court's "sound discretion[.]" *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010) (citing *Bailey v. Great Lakes Canning, Inc*., 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (internal quotation omitted).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include:

A. Whether the class representatives and class counsel have adequately represented the class;

B. Whether the proposal was negotiated at arm's length;

C. Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members

14

claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D.  Whether the proposal treats class members equitably.

*Id.* These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at *Advisory Committee's Note to 2018 amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these factors." *Doe v. Ohio*, No. 2:91-CV-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020), *R. & R. adopted*, No. 2:91-CV-464, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020), quoting *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). All the case law and 23(e) factors weigh in favor of granting final approval here.

### 1.  <u>The Settlement Resulted from Mediated, Arm's-Length Negotiations without any Risk or Evidence of Fraud or Collusion.</u>

Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 at 90 (4th Ed. 2002); *see also Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval").

The Settlement was the result of extensive, contentious, arm's length negotiations between counsel with extensive experience in handling class actions, including data privacy class actions such as this one. Coates Final Approval Decl., ¶¶ 2, 14. Settlement negotiations in this case took place over the course of several months and involved a full-day mediation session with well-

respected mediator Bruce Friedman that was unsuccessful. Coates Final Approval Decl., ¶ 2. No collusion existed during the settlement process. *Id.*

> ### 2. The Complexity, Expense, Likely Duration of the Litigation, and Substantial Risk for Plaintiffs Warrant Final Approval of the Settlement.

The Sixth Circuit has identified the likelihood of success on the merits as the most important factor a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11-CV-1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011), quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.*, quoting 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.50 (4th ed. 2002).[8] This case is no different, in that it is a data privacy class action and a settlement at this stage of the case will avoid the "costs, delays, and

---

[8] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." (internal citations and quotations omitted)); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

multitude of other problems associated" with class action cases. *Id.*, quoting *In re Austrian*, 80 F. Supp. 2d at 174. Due at least in part to their cutting-edge nature and the rapidly-evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying class certification); *see also Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) (collecting cases and noting that "data breach cases have experienced minimal success in moving for class certification"). Courts (including within the Sixth Circuit) have more recently granted contested motions for class certification in the data breach context. *See, e.g.*, *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661 (W.D. Ky. 2024) (certifying contested class of employees whose Social Security numbers were stolen in data breach). However, it would likely take years of intense litigation just to reach that point. *See, e.g.*, *id.* (certifying class after roughly seven years of litigation). Further, if Plaintiffs were successful in obtaining certification of a litigation class, the certification would not be set in stone. *Long v. HSBC USA Inc.*, No. 14 CIV. 6233, 2015 WL 5444651, *4 (S.D.N.Y. Sept. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to decertify by defendants, requiring additional briefing.").

Plaintiffs would likely face several strong legal defenses and hurdles in demonstrating causation and injury. Coates Final Approval Decl., ¶ 3. Through informal discovery, Defendant presented Plaintiffs' Counsel with an arbitration agreement template that likely would have compelled the majority of the class to arbitration. *Id.* Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and Class Members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval. *Id.* While Plaintiffs are confident in the strength of their claims, they are also pragmatic and aware of the various defenses available to Defendant, as well as the risks inherent to continued litigation. *Id.* ¶ 3. Through the Settlement, Plaintiffs and Class Members gain reasonable, tangible benefits without having to face the further risk of not receiving any relief at all. *Id.*

The Settlement offers immediate, significant, and substantial relief to all Class Members who submit a claim. It also delivers real value to Class Members as demonstrated by the estimated payment figure above. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

### 3. <u>The Fact that Plaintiffs and Counsel for Plaintiffs and Defendant Recommend Approval of the Settlement Strongly Indicates that the Settlement is Fair, Reasonable, and Adequate.</u>

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has

competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by class representatives who, like the Plaintiffs here, were intimately involved in the litigation and supports the Settlement. *Gascho v. Glob. Fitness Holdings*, *LLC*, No. 2:11-CV-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014), *R. & R. adopted*, 2014 WL 3543819 (July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiffs support this Settlement because it provides Class Members with immediate and real benefits. As the result of informal discovery conducted and extensive settlement negotiations, the Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Coates Final Approval Decl., ¶ 3. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

### 4. <u>The Class's Reaction Overwhelming Supports the Settlement.</u>

No Class Member has requested exclusion and only one, an attorney, has objected to the Settlement. Furthermore, that 2,512 Class Members have submitted claims indicates that the Class strongly supports the Settlement. Coates Final Approval Decl., ¶ 5.

#### a. *Objector O'Connor's Spray-Shot Objection Should be Overruled*

The sole objector, attorney Brian O'Connor, objects to the Settlement alleging: "(1) Plaintiffs failed their burden to establish the existence of subject-matter jurisdiction; (2) the Proposed Service Awards are not fair or reasonable; (3) the settlement agreement does not disclose CinFed's 'business practice changes' to the class members; (4) the monetary compensation is not fair, reasonable and adequate; and (5) a one-third attorney fees request would be unreasonable."

ECF No. 24, PageID # 368. As described below, each of these five grounds for objecting to the Settlement lacks merit, is conclusory, and should be overruled.

      i.    Subject Matter Jurisdiction is Established in this Case.

Objector O'Connor claims this case should be dismissed because this Court lacks subject matter jurisdiction. Objection, PageID # 367-370. Objector's argument ignores the procedural history of the case, the undisputed facts, and the relevant case law cited by the Court.

Plaintiffs Paige and Talbot-Jones originally filed their class action complaint in the Hamilton County Court of Common Pleas (Case Nos. A 2305001 and A 2305083). Cinfed removed each case to this Court, submitting a Declaration of Eric Ketcham. Case No. 1:23-cv-00829, ECF. Nos. 1, 1-2; Case No. 1:23-cv-00830, ECF Nos. 1, 1-2.

Upon removal, it was the burden of Defendant to establish this Court's subject matter jurisdiction. *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006) (noting that, in the removal context, defendants bear the burden of demonstrating that federal subject matter jurisdiction exists). The Notices of Removal state that "Cinfed is a citizen of Ohio" due to its principal place of business being in Cincinnati, Ohio. Case No. 1:23-cv-00830, ECF No. 1, PageID # 3, ¶ 12 ("Thus, Cinfed is a citizen of Ohio. *See* 28 U.S.C. § 1332(c)(1) (corporation is a citizen of the state where it maintains its 'principal place of business'"); *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 364 (4th Cir. 2020) (holding "that a federal credit union is a 'corporation[,]'" and that "§ 1332(c)(1) says that 'a corporation shall be deemed a citizen of the State or foreign state where it has its principal place of business.'" (citations omitted and cleaned up)). Furthermore, the Declaration of Eric Ketcham identified that 64.49% of the Class are residents of the State of Ohio. Case No. 1:23-cv-00830 (S.D. Ohio), ECF No. 1-2, PageID # 60, ¶ 6. Therefore, the Home State Exception to CAFA jurisdiction does not apply, since fewer than

two-thirds of Class Members are residents of the State of original filing. 28 U.S.C. § 1332(d)(4)(B). Each of the underlying cases was consolidated into this Action. ECF No. 15.

When granting preliminary approval, this Court cited the same *Navy Federal Credit Union* case that Cinfed relied upon to establish federal court jurisdiction during the removal process. ECF No. 23, PageID # 352. The Court agreed with the analysis of the Fourth Circuit in that case, which held that the language of 28 U.S.C. § 1332(c)(1) should be read to allow for diversity based on the principal place of business, even where a corporation is "stateless" with regard to its incorporation. ECF 23, PageID ## 351-352. Courts in several other circuits have followed this approach. *See, e.g.*, *BCBSM, Inc. v. Walgreen Co.*, 642 F. Supp. 3d 732, 741 (N.D. Ill. 2022) ("The Fourth Circuit's rationale is persuasive and leads to the simple conclusion that GHMSI is a citizen of Washington, D.C. because its principal place of business is located there."); *Prosper v. Navy Fed. Credit Union*, No. 1:22-CV-01301, 2022 WL 17541784, at *4 n.5 (N.D. Ga. Oct. 5, 2022) (finding Fourth Circuit persuasive but inviting further briefing); *Prosper v. Navy Fed. Credit Union*, No. 1:22-CV-01301, 2022 WL 18780929, at *3 n.2 (N.D. Ga. Nov. 16, 2022) (maintaining previous holding after further briefing), *R. & R. adopted*, 2022 WL 18780943 (N.D. Ga. Dec. 12, 2022); *see also Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280, 2019 WL 2269958, at *6 (S.D. Cal. May 28, 2019) (similarly following Fourth Circuit).

Objector addresses neither the factual premises for jurisdiction, nor the rationale of *Navy Fed. Credit Union* as adopted by this Court. He does not dispute that Defendant's principal place of business is in Cincinnati. He mentions *Navy Fed. Credit Union*, yet fails to analyze, critique, or distinguish its holding, under which subject matter jurisdiction is established in this case.

Instead of addressing the relevant case law, Objector cites case law addressing a separate basis for diversity jurisdiction with respect to federal credit unions, generally involving application

21

of factors to determine whether the credit union's activities are "localized" in a given state. *See Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (applying factors such as principal place of business and location of branch offices). He then argues under this inapplicable doctrine that the "facts" show that Defendant's activities are not localized and therefore jurisdiction is absent. But even were this doctrine to apply, the fact that the vast majority of branches and ATMs of Defendant are in Ohio, as well as its principal place of business, would augur in favor of Defendant's Ohio citizenship.

But the Court need not apply the inapplicable approach that Objector raised. As the Court correctly determined, subject matter jurisdiction exists under "the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). This is a class action involving more than 100 putative class members; the amount in controversy exceed $5,000,000, exclusive of interest and costs"; "[a]t least 1 class member[] is a citizen of a different state than Defendant;" "Defendant Cinfed Federal Credit Union is a community chartered federal credit union with is principal place of business located at 4801 Kennedy Avenue, Cincinnati, OH 45209 within Hamilton County . . . ."; and no CAFA exception applies. CAC, ¶¶ 12, 20. Accordingly, Objector's claim that this Court's subject matter jurisdiction is lacking in this case should be overruled.

          ii.    The Requested Service Awards are Modest, Justified and Reasonable.

Next, Objector O'Connor complains that the request for $2,000 Service Awards to each of the five Class Representatives is unreasonable "because that would award the representatives who did essentially nothing exponentially more than absent class members" Objection, PageID # 370. Objector O'Connor also takes issue with the fact that the Class Representatives did not file any "evidentiary basis for the sizeable service awards" as of November 7, 2024. *Id*., PageID # 371-72. Plaintiffs addressed these arguments more fully in their Motion for Attorneys' Fees, Expenses, and

Class Representative Service Awards. ECF No. 25 at PageID # 391-395. As explained therein, the Settlement Timeline in this case specifically identified that the deadline for moving for Service Awards was fourteen days before the December 10, 2024 objection and opt-out deadline. S.A. at 36. Plaintiffs complied with the Settlement Timeline and submitted their request for $2,000 Service Awards as part of their Motion for Attorneys' Fees, including declarations from Plaintiffs.[9] In their declarations, the Class Representatives detailed their substantial contributions to the Class, resulting in the $700,000 non-reversionary Settlement Fund. Plaintiffs' Service Awards requests are justified given their significant contributions to the Class. ECF Nos. 25-12 to 25-15.

Moreover, the $2,000 Service Awards requested here are less than the amount routinely awarded recently in similar data breach class action settlements within this Circuit. *Migliaccio v. Parker Hannifin Corp.*, No. 1:22-cv-835, ECF No. 42, ¶ 7 (N.D. Ohio Aug. 2, 2023) (Polster, J.) ($3,500 service awards to each of the nine class representatives in a case resolving before a motion to dismiss decision); *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-CV-3499, 2024 WL 958726, at *7 (S.D. Ohio Mar. 5, 2024) (Watson, J.) ($5,000 service awards to each of the class representatives in a case that was decided before a motion to dismiss decision); *Tucker v. Marietta Area Healthcare, Inc.*, No. 2:22-cv-00184, ECF No. 13, ¶ 7 (S.D. Ohio Dec. 8, 2023) (Morrison, J.) ($5,000 service awards to each of the six class representatives); *In re Marshall & Melhorn, LLC Data Breach Litig.*, No 3:23-cv-1181, ECF No. 34, ¶ 7 (N.D. Ohio Jan. 13, 2025) (Knepp, J.) ($2,500 service awards in a case resolving before a motion to dismiss decision); *Phelps v. Toyotetsu N. Am.*, No. 6:22-cv-106, ECF No. 47, PageID # 542 (E.D. Ky. Oct. 25, 2023) (Boom, J.) ($5,000 service award in a case resolving before a motion to dismiss decision).

---

[9] Class Counsel acknowledges that Plaintiff Valencia Davis did not submit a declaration.

Notably, Objector recently requested and received a $10,000 service award for a class representative in a class action settlement that afforded only injunctive relief to the class under Fed. R. Civ. P. 23(b)(2). *Pansiera v. Home City Ice Co.*, No. 1:19-CV-1042, 2024 WL 813759, at *7-8 (S.D. Ohio Feb. 27, 2024). Here, the Class Representatives seek service awards that are only 20% ($2,000) of the $10,000 amount Objector petitioned the court for in *Home City Ice* – a case where all other class members received no monetary compensation.

      iii.    The Business Practice Changes Routinely Are Not Publicized in Data Breach Class Action Settlements.

Defendants often commit to cybersecurity enhancements in the wake of a data breach, particularly in conjunction with a data breach class action settlement. In Class Counsel's experience, defendants are reluctant to submit the cybersecurity enhancements as part of the public record beyond generalizations about the enhancements in order to protect the Defendant's systems from possible further data incidents in the future. Coates Final Approval Decl., ¶ 4. As part of the settlement process, Defendant has discussed with Class Counsel, in confidence, cybersecurity enhancements it had either implemented or was preparing to implement. *Id*. To place this information in the public record potentially jeopardizes the Private Information of the Class again.

      iv.    The Monetary Compensation is Fair and Reasonable and Consistent with the Monetary Compensation Approved in Other Data Privacy Class Action Settlements.

Objector O'Connor further complains that the settlement amount and recovery is just too low to warrant final approval. This argument fails for four reasons. First, courts have concluded that an assertion that a payment amount is too low is an improper basis for objecting because the class member may opt out of the settlement and seek a potentially higher individual recovery. *See Ryder v. Wells Fargo Bank, N.A.*, No. 1:19-CV-638, 2022 WL 223570, at *2 (S.D. Ohio Jan. 25, 2022) (overruling an objection that the individual payments are too low because the class member

had the ability to opt out of the settlement and provided no evidence to support a higher payment); *Rosado v. Ebay Inc.*, No. 5:12-CV-04005, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016) (noting that "[i]f the objector believes he has suffered damages that are significantly higher than the typical class member, he should opt out of the class and separately pursue his claims against" the defendant); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1042 (S.D. Cal. 2017) (finding an objection unpersuasive, in part, because the class member was free to opt out if he or she believed that the settlement amount was too low).

Second, acknowledging that settlements are compromises, courts routinely overrule objections that class action settlements are too low. *Bechtel v. Fitness Equipment Services, LLC*, No. 1:19-cv-00726, ECF. No. 73, PageID # 1573 (S.D. Ohio Sept. 30, 2022) ("The meaningful recovery of $30 to $35 per treadmill at this early juncture represents reasonable compensation consistent with the risk and expenses associated with this type of litigation."); *Abadilla v. Precigen, Inc.*, No. 20-CV-06936, 2023 WL 7305053, at *13 (N.D. Cal. Nov. 6, 2023) ("The Court will overrule this objection for the same reasons it overruled Mr. Dean's objection that the Settlement Amount is too low: a settlement generally requires a level of compromise under which litigants receive a certain recovery less than the full amount of their losses, and the Court finds the Settlement Agreement, including the Settlement Amount and the Plan of Allocation, to be fair, reasonable, and adequate."); *Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019) (noting that although "every litigant hopes to recover the full amount of his losses, . . . the very nature of a settlement is that the parties must compromise and accept less than a full recovery, in exchange for no longer facing the risk of losing on the merits and losing any chance of recovery"); *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, No. 3:05-MD-527, 2017 WL 1735578, at *3 (N.D. Ind. Apr. 28, 2017) (noting that an

objector claiming a settlement is too low "might be right, but that's the nature of settlements: if a settlement had to produce full compensation for everything a plaintiff lost, no defendant would settle. A settlement is, by its nature, a compromise.").

Third, the projected *pro-rata* cash payment of $65 per Class Member submitting a valid claim in this case (currently projected to be $120-$168 per valid claimant) compares favorably to the cash payments made available in other data breach settlements utilizing *pro-rata* cash payments as a component of the settlement relief. Coates Final Approval Decl., ¶ 8. Furthermore, the Pro Rata Payment is just one of two monetary payments available under the Settlement with the other being the up to $5,000 in Out-of-Pocket Expense Claims. S.A. ¶ 2.1.

Fourth, Class Counsel provided ample support that this Settlement is within the range of reasonableness when compared to various other data breach class action common fund settlement. Coates Preliminary Approval Decl., ¶ 21 (chart of comparable settlements); Coates Fee Decl., ¶ 13 (chart of comparable settlements). The Settlement amount of $700,000 for approximately 57,836 Class Members (roughly $12.10) per Class Member is above certain similar settlements and below certain other similar settlements, meaning that the settlement amount is in the range of reasonableness. *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 235 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation." (internal citations omitted)); *see also* Coates Preliminary Approval Decl., ¶ 21; Coates Fee Decl., ¶ 13. Objector's argument that the settlement is too low should be overruled given that the Settlement undoubtedly is within the range of reasonableness when compared against other data breach class action settlements.

v.    The Attorneys' Fee Request of One-Third of the Settlement
Fund is Fair and Reasonable and Routinely Approved.

As explained more fully in Plaintiffs' Motion for Attorneys' Fees, the requested fees are

fair, reasonable, and routinely approved by Ohio state and federal courts alike. ECF No. 25, at

PageID # 379-390. Objector O'Connor cites one out-of-circuit decision for the proposition that the

majority of common fund class action fee awards fall between twenty and thirty percent.

Objection, at PageID # 373, citing *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82,

98 (D.D.C. 2013). In doing so, he fails to recognize more recent case law—within the Sixth

Circuit—where courts routinely approve attorneys' fee requests of one-third of the settlement fund

in data breach class action cases. *See In re CorrectCare Data Breach Litig.*, No. CV 5:22-319,

2024 WL 4211480, at *4 (E.D. Ky. Sept. 17, 2024) (approving attorneys' fees of 1/3 of the

$6,490,000 settlement fund); *Parker Hannifin*, No. 1:22-cv-835, ECF No. 42, ¶ 7 (N.D. Ohio Aug.

2, 2023) ($583,333.33 fee award from a $1,750,000 common fund in a data breach class action

settlement before the motion to dismiss decision); *Marietta Area Health Care*, No. 1:11-cv-184,

ECF No. 38, ¶ 7 (S.D. Ohio Dec. 8, 2023) ($583,333.33 fee award from a $1,750,000 common

fund in a data breach class action settlement after the motion to dismiss was decided); *Toyotetsu*,

No. 6:22-cv-106, ECF No. 47, PageID # 542 (E.D. Ky. Oct. 25, 2023) (granting attorneys' fees of

one-third of the common fund in a data breach class action settlement before a motion to dismiss

decision); *Marshall & Melhorn*, No 3:23-cv-1181, ECF No. 34, ¶ 7 (N.D. Ohio Jan. 13, 2025)

(awarding attorneys' fees of $266,666.66 from the $800,000 settlement fund).

Notably, Objector O'Connor filed his Objection (ECF No. 24) on November 7, 2024,

before the Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 25) was filed on

November 26, 2024. In that Motion, Class Counsel identified the reasonableness of the

$233,333.33 attorneys' fees requests including detailing each of Plaintiffs' Counsel's lodestar and

expense amounts. To date, Class Counsel and Plaintiffs' Counsel have accrued $219,946.00 in

lodestar for a current multiplier of roughly 1.06. Coates Final Approval Decl., ¶ 11. Class Counsel

expect that the $233,333.33 requested attorneys' fee award will result in a negative multiplier due

to their continued representation of the Class through Final Approval and beyond. *Id.*; *see also*

*Miller v. Baltimore Builders Supply & Millwork, Inc.*, No. 2:21-cv-4867, 2023 WL 6554073, at *2

(S.D. Ohio Sept. 13, 2023) (noting that "a negative multiplier supports the reasonableness of the

fees."). Accordingly, Class Counsel's attorneys' fees request of $233,333.33, amounting to one-

third of the $700,000 Settlement Fund, is reasonable and justified under the circumstances of this

case. The objection that the requested attorneys' fees are too high should therefore be overruled.

### 5.  This Settlement Serves the Public Interest.

"[T]he law favors settlement, particularly in class actions and other complex cases where

substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL

3862363, at *12, quoting 4 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41

(4th ed. 2002); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)

("There is a strong public interest in encouraging settlement of complex litigation and class action

suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial

resources.").[10]

This Settlement serves the public's interest by avoiding protracted litigation and freeing up

judicial resources. *See In re Telectronics*, 137 F. Supp. 2d 985, 1025 (S.D. Ohio 2001); *see also*

*Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007); *Enter. Energy Corp. v. Columbia*

*Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that settlement of a class

---

[10] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve.").

action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals").

In this case, in light of the immediate cash benefits the Settlement provides to Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" is well served by approval of this Settlement.

### 6. **The Other Rule 23(e) Factors Support the Settlement.**

The remaining Rule 23(e) factors not already discussed also support the Settlement. The class representatives and class counsel have adequately represented the class, as shown both by the work performed, the relief obtained, and lack of any meaningful objections. Fed. R. Civ. P. 23(e)(2)(C)(i). The method of distributing relief was chosen to make the claims process simple. Fed. R. Civ. P. 23(e)(2)(C)(ii). The attorneys' fees of one-third of the common fund are well within the range of reasonableness for fees in this type of case and will not be paid until the Effective Date. Fed. R. Civ. P. 23(e)(2)(C)(iii); *see also* Section VI(D)(4)(a)(i) above; S.A. ¶ 7.4; Coates Fee Decl., ¶ 7; Coates Final Approval Decl., ¶¶ 11-12. There is no undisclosed agreement made in connection with the Settlement. Coates Final Approval Decl., ¶ 14 *see also* Fed. R. Civ. P. 23(e)(2)(C)(iv). All Class Members are treated equitably relative to each other—they all have the opportunity for a *pro-rata* payment. Fed. R. Civ. P. 23(e)(2)(D). All of the factors weigh in favor of concluding the Settlement is fair, reasonable, and adequate.

### VII.    CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs respectfully request that the Court grant final approval of class action settlement in the form of the proposed Order attached as **Exhibit 3**, including awarding Service Awards in the amount of $2,000, reasonable attorneys' fees in the amount of $233,333.33, and litigation expenses in the amount of $12,287.04.

Dated: January 28, 2025                    Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579)
Dylan J. Gould (0097954)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Tel: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Philip J. Krzeski (0095713)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue, Suite 1700
Minneapolis, MN 55401-2138
Telephone: (612) 339-7300
Facsimile: (612) 336-2940
*pkrzeski@chestnutcambronne.com*

***Class Counsel***

David K. Lietz (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLC**
5335 Wisconsin Avenue NW
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
*dlietz@milberg.com*

Jason C. Kuhlman (0074316)
**THE LAW OFFICE OF JASON C.
KUHLMAN, PLLC**
P.O. Box 17216
Fort Mitchell, KY 41017
Tel: (859) 801-2990
*jason@jckuhlmanlaw.com*

Alexander Edmondson*
**EDMONDSON & ASSOCIATES LAW**
28th West 5th
Covington, Kentucky 41011
Tel: (859) 491-4100
*aedmondson@edmondsonlaw.com*

Gary E. Mason (admitted *pro hac vice*)
Danielle L. Perry*
Lisa A. White*
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
*gmason@masonllp.com*
*dperry@masonllp.com*
*lwhite@masonllp.com*

Joseph M. Lyon (0076050)
Kevin M. Cox (0099584)
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
513-381-2333
Fax: 513-766-9011
jlyon@thelyonfirm.com
kcox@thelyonfirm.com

***Plaintiffs' Counsel***

* Motion to Appear *Pro Hac Vice* forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, a copy of the foregoing was served upon counsel for all parties by electronic filing with the Court's electronic-filing system, in accordance with Fed. R. Civ. P. 5(b)(2)(E) and S.D. Ohio Civ. R. 5.2(b).

*/s/ Terence R. Coates*
Terence R. Coates