# EXHIBIT
# 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| *In re Cinfed Federal Credit Union Data Breach Litigation* | Case No.: 1:23-CV-776 |
| | Judge Douglas R. Cole |

## DECLARATION OF TERENCE R. COATES IN SUPPORT OF PLAINTIFFS' MOTION FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, Terence R. Coates, hereby state that the following is true and accurate and based on my personal knowledge:

1. I am the managing partner of the law firm Markovits, Stock & DeMarco, LLC ("MSD"). I am one of the preliminarily-approved Class Counsel for Plaintiffs in this matter and have monitored my firm's and my co-counsel's participation in this matter from 2023 to the present. The contents of this Declaration are based upon my own personal knowledge, my experience in handling many class action cases, and the events of this litigation.

2. The Settlement Agreement reached by the Parties was negotiated at arm's-length and was the result of hard bargaining. The $700,000 non-reversionary common fund was reached after the Parties engaged in a day-long mediation session with Bruce Friedman, a respected mediator with substantial experience with data privacy class actions. Informal discovery identified 37,373 Class Members are from Ohio and 16,453 Class Members are from Kentucky meaning that roughly 93.0% of the Class is from Ohio and Kentucky. Before participating in mediation, the Parties participated in informal discovery for settlement purposes and exchanged detailed mediation statements. While the mediation did not result in a settlement in principle that day, Mr.

Friedman made a mediator's proposal. The mediator's proposal was not accepted resulting in the Parties' continued negotiation efforts over the next several weeks producing a settlement in principle for the $700,000 non-reversionary common fund. Through the exchange of informal discovery for settlement purposes, the exchange of mediations statements, protracted settlement negotiations, and Class Counsel's extensive experience with representing plaintiffs in data privacy class action cases, Plaintiffs were able to analyze the strengths and weaknesses of their case resulting in the informed opinion that a settlement know is in Plaintiffs and the Class's best interests.

3.     Plaintiffs and the Class faced serious hurdles proceeding with this litigation. Cinfed produced examples of arbitration agreements that very likely would have compelled the majority of the Class to arbitration including barring any case from proceeding as a putative class action. Furthermore, even if Plaintiffs were successful in defeating a motion to compel arbitration, Cinfed would still move to dismiss Plaintiffs' claims through a motion to dismiss. Thereafter, Plaintiffs would still need to certify a class and/or classes in the face of a contested motion for class certification. Class certification in data breach class actions is far from routine. *See In re Onix Grp., LLC Data Breach Litig.*, No. 23-2288, 2024 WL 5107594, at *14 (E.D. Pa. Dec. 13, 2024) ("Plus, data breach cases are inherently risky and present unique challenges to establish standing and obtain class certification."). Given the anticipated delay that would follow the briefing of a motion to compel arbitration including the likely appeal that the losing party would file, Plaintiffs made the informed decision that resolving the case for a $700,00 non-reversionary common fund was in the Class's best interests. Through a settlement now, Plaintiffs and Class Members are able to receive real, tangible monetary cash payments without the risk of receiving nothing at all and without the burden of increased litigation expenses.

4.     I have represented many Plaintiffs in data privacy class action lawsuits in state and federal courts across the United States. During the course of these representations, I have frequently discussed and negotiated cybersecurity enhancements with defendants' counsel as a component of the settlement of class claims. In my experience, defendants are reluctant to place detailed cybersecurity enhancements into the public realm. Instead, defense counsel usually prefer to generally describe the cybersecurity enhancements to the extent they are asked about the cybersecurity enhancements/business practice changes by the court. As part of the settlement process here, Defendants have discussed with Class Counsel, in confidence, cybersecurity enhancements they had either implemented or were preparing to implement.

## THE CLASS SUPPORTS THE SETTLEMENT

5.     A factor to consider in determining whether a settlement is fair, reasonable, and adequate is the Class's reaction to the settlement. As of January 27, 2025, 2,512 Class Members submitted claims for compensation (1,173 online and 1,339 paper claims) under the Settlement, meaning there is a 4.34% claims (2,512 claims / 57,836 Settlement Class Members). A claims rate of 4.34% in a data breach settlement is reasonable. Class Counsel have represented plaintiffs in many other data breach class action settlements, and understand that data breach class actions historically have received claims rates between 1-3%. In addition to the 4.34% claims rate, only one Class Member objected to the Settlement and no Class Members requested to opt out of the Settlement. These factors are strong indicators that the Class overwhelming supports the Settlement.

6.     The following chart identifies claims rates in recent common fund data breach class action settlement also including a cash payment as a settlement benefit. My firm has been a member

of plaintiffs' counsel or I have spoken with the plaintiffs' counsel in each of the following cases in compiling this chart:

| Case Name | Case Number | Claims Rate |
|---|---|---|
| *Hendrix v. Marshall & Melhorn* | No. 3:23-cv-1181 (N.D. Ohio) | 0.47% |
| *Williams v. Air Methods LLC* | No. 1:24-cv-00642 (D. Colo.) | 2.47% |
| *Kohn v. Loren Stark Co., Inc.* | No. 4:23-cv-3035 (S.D. Tex.) | 2.77% |
| *Boykin v. Choice Health Insurance, LLC* | No. 4:22-cv-03940 (D.S.C.) | 3.51% |
| *Pederson v. AAA Collections, Inc.* | No. 4:22-cv-4166 (D.S.D.) | 4.0% |
| *Lutz v. Electromed, Inc.* | No. 21-cv-2198-KMM-DTS (D. Minn.) | 4.0% |
| ***In re Cinfed Federal Credit Union Data Breach Litigation*** | **No. 1:23-cv-776 (S.D. Ohio)** | **4.34%** |
| *Tucker v. Maritta Area Healthcare* | No. 2:22-cv-184 (S.D. Ohio) | 6.2% |
| *Lamie v. Lendingtree, LLC* | No. 3:22-cv-00637 (W.D.N.C.) | 7.43% |
| *Marshall v. Lamoille Health Partners* | No. 2:22-cv-166 (D. Vt.) | 9.37% |
| *Migliaccio v. Parker Hannifin, Corp.* | No. 1:22-cv-835 (N.D. Ohio) | 9.89% |
| *Abrams v. Savannah College of Art & Design, Inc.* | No. 1-22-cv-4297 (N.D. Ga.) | 10.8% |

7. Class Counsel projected the Pro Rata Cash Payment component of the Settlement to be $65 if there was a 10% valid claims rate based on roughly 58,000 total Settlement Class Members under the Settlement. Simpluris is working through the deficient claims to determine if any of them may be validated and is also determining whether there are any valid Out-of-Pocket Expenses claims. Class Counsel anticipates having more definite numbers on the number of valid claims and the total dollar amount validated and approved for payment by the Final Approval Hearing. Understanding there is a roughly 4.34% claims rate with 1,804 valid claims to date and assuming the Court awards the amounts requested under the Settlement and that there are $5,000 in valid Out-of-Pocket Expenses claims, the Pro Rata Cash Payment amount would be approximately $167.88. If all 708 deficient claims are validated, the Pro Rata Cash Payment amount would be approximately $120.56. The projected Pro Rata Cash Payment amount of $65

and the current projection of the actual Pro Rata Cash Payment amount of between roughly $120-$168 is within the range of reasonable and consistent with the amount routinely approved by other courts in data breach class action settlements. Notably, the Pro Rata Cash Payment is just one of two monetary settlement benefits made available to the Class.

8.    The pro rata cash payments available in this case are similar to those offered and finally approved in other similar data breach common fund class action settlements:

| Case Name | Case Number | Pro Rata Payment Projected | Pro Rata Payment Amount |
|---|---|---|---|
| *Williams v. Air Methods LLC* | No. 1:24-cv-00642 (D. Colo.) | $75.00 | $89.75 |
| *Kohn v. Loren Stark Co., Inc.* | No. 4:23-cv-3035 (S.D. Tex.) | $70.00 | $70.00 (capped) |
| *Boykin v. Choice Health Insurance, LLC* | No. 4:22-cv-03940 (D.S.C.) | $50.00 | $147.71 |
| *Pederson v. AAA Collections, Inc.* | No. 4:22-cv-4166 (D.S.D.) | $50.00 | $141.96 |
| ***In re Cinfed Federal Credit Union Data Breach Litigation*** | **No. 1:23-cv-776 (S.D. Ohio)** | **$65.00** | **$120-$168** |
| *Marshall v. Lamoille Health Partners* | No. 2:22-cv-166 (D. Vt.) | $50.00 | $49.80 |
| *Tucker v. Maritta Area Healthcare* | No. 2:22-cv-184 (S.D. Ohio) | $50.00 | $50.05 |
| *Abrams v. Savannah College of Art & Design, Inc.* | No. 1-22-cv-4297 (N.D. Ga.) | $50.00 | $67.60 |
| *Phillips v. Bay Bridge Administrators* | No. 1:23-cv-00022 (W.D. Tex.) | $50.00 | $103.00 |
| *Phelps v. Toyotetsu N. Am.* | No. 6:22-cv-106 (E.D. Ky.) | $250.00 | $285.00 |

## CLASS COUNSEL'S LODESTAR & EXPENSES

9.    Under the Settlement, Class Counsel may seek up to 1/3 of the Settlement Fund ($233,333.33) and up to $15,000 in expenses. In my November 26, 2024 Declaration in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (ECF No. 25-1), Class Counsel listed expenses of $12,287.04, which remains the same.

10.     I, my firm, and my co-counsel have accrued additional attorneys' hours worked since the filing of the motion for attorneys' fees, expenses, and service awards consisting of an additional 42.3 hours for a lodestar total of $29,143.00.

11.     Thus, the current total lodestar is $219,946.00 (based on 342.8 hours), with the Final Approval Hearing yet to come. This currently represents a lodestar multiplier of roughly 1.06. Class Counsel and Plaintiffs' Counsel expect to expend roughly 50-75 hours of additional time and effort in attending the Final Approval Hearing, overseeing the distribution of settlement benefits, and continuing to work with Settlement Class Members and Simpluris. Based on the $219,946.00 in lodestar accrued to date, Class Counsel expect that they will have a negative multiplier representing the Class through Final Approval and beyond. *Miller v. Baltimore Builders Supply & Millwork, Inc.*, No. 2:21-cv-4867, 2023 WL 6554073, at *2 (S.D. Ohio Sept. 13, 2023) (noting that "a negative multiplier supports the reasonableness of the fees."). A chart including Class Counsel and Plaintiffs' Counsel's updated hours and lodestar is attached as **Exhibit A** and my firm's updated lodestar chart by timekeeper is attached as **Exhibit B**.

12.     Earlier this month, another Ohio federal court awarded attorneys' fees of one-third of the common fund in a similar data breach class action settlement. *In re Marshall & Melhorn, LLC Data Breach Litig.*, No 3:23-cv-1181 (N.D. Ohio Jan. 13, 2025; ECF No. 34, ¶ 7).

**The $2,000 SERVICE AWARDS REMAIN REASONABLE**

13.     The Class Representatives continue to endorse the Settlement. Two weeks ago, Judge Knepp awarded $2,500 Service Awards in a similar data breach settlement when the case also resolved before a motion to dismiss decision. *In re Marshall & Melhorn*, ECF No. 34, ¶ 7. This continues the trend of Ohio federal courts awarding service awards in data breach class action settlements in amounts that exceed the modest $2,000 Service Awards requested in this case.

## THE $700,000 NON-REVERSIONARY COMMON FUND IS A REASONABLE RECOVERY FOR PLAINTIFFS AND THE CLASS

14.     Furthermore, through my experience in handling many data breach class action cases for plaintiffs, I can confirm that the $700,000 non-reversionary common fund settlement is fair and reasonable for 57,836 Class Members. I am also aware that my co-counsel are litigating over 100 data breach class actions for plaintiffs and also opine that the Settlement is fair and reasonable. There are no undisclosed agreements under Fed. R. Civ. P 23(e)(3).

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746(2).

Executed in Cincinnati, Ohio on January 28, 2025.

*/s/ Terence R. Coates*
Terence R. Coates

# EXHIBIT

# A

**Class Counsel – Lodestar & Expenses**
*In re Cinfed Federal Credit Union Data Breach Litigation,*
Case No. 1:23-cv-776 (S.D. Ohio)

**LODESTAR**

| Firm | Hours | Lodestar | Expenses |
|------|-------|----------|----------|
| Markovits, Stock & DeMarco, LLC | 121.2 | $86,898.00 | $1,044.60 |
| Chestnut Cambronne PA | 82.7 | $49,989.00 | $10,014.00 |
| Milberg | 43.8 | $32,143.00 | $0.00 |
| The Lyon Firm | 30.6 | $20,651.00 | $377.95 |
| Edmondson & Associates | 36.8 | $17,212.50 | $405.00 |
| Mason LLP | 27.7 | $13,052.50 | $445.49 |
| | | | |
| **Total** | **342.8** | **$219,946.00** | **$12,287.04** |

**EXPENSES**

| Mediation | Filing Fees/Service | Postage | Copies | | TOTAL |
|-----------|--------------------|---------|--------|---|-------|
| $9,000.00 | $3,281.04 | $1.35 | $4.65 | | **$12,287.04** |

1

# EXHIBIT

# B

**Markovits, Stock & DeMarco, LLC – Lodestar & Expenses**
*In re Cinfed Federal Credit Union Data Breach Litigation*,
Case No. 1:23-cv-776 (S.D. Ohio) from case inception until 1/27/2025

### LODESTAR

| Individual | Hours | Hourly Rate | Exp. Years | Lodestar |
|---|---|---|---|---|
| Terence R. Coates (Partner) | 66.9 | $850.00 | 15 | $56,865.00 |
| Jonanthan T. Deters (Attorney) | 21.6 | $590 | 9 | $12,468.00 |
| Dylan J. Gould (Attorney) | 22.2 | $590 | 6 | $13,098.00 |
| Spencer D. Campbell (Attorney) | 7.1 | $430 | 2 | $3,053.00 |
| Isabel DeMarco (Attorney) | 3.2 | $430 | 2 | $1,376.00 |
| Brandy M. Mathews (Paralegal) | .2 | $190 | 5 | $38.00 |
|  |  |  |  |  |
| **Total** | **121.2** |  |  | **$86,898.00** |
|  |  |  |  |  |

1